No. 23-2369

# In the
# United States Court of Appeals For the Eighth Circuit

_____

Rebecca Smith and Cristine M. Ghanim,
individually and on behalf of all others similarly situated,

*Plaintiffs-Appellants*,

v.

UnitedHealth Group Inc., United Healthcare Services, Inc.,
UnitedHealthcare Insurance Company, United Medical Resources,
United Healthcare Service LLC, and Doe Defendants 1-10,

*Defendants-Appellees.*

_____

On Appeal from the U.S. District Court for the District of Minnesota
Case No. 22-CV-1658 (NEB/DJF)

## BRIEF OF PLAINTIFFS-APPELLANTS

Karen L. Handorf, Esq.
Julie S. Selesnick, Esq.
BERGER MONTAGUE PC
2001 Pennsylvania Ave., NW, Suite 300
Washington, D.C. 20006
Tel. (202) 559-9740
khandorf@bm.net
jselesnick@bm.net

E. Michelle Drake, Esq.
BERGER MONTAGUE PC
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Tel. (612) 594-5999
emdrake@bm.net

D. Brian Hufford, Esq.
Jason S. Cowart, Esq.
ZUCKERMAN SPAEDER LLP
485 Madison Avenue, 10th floor
New York, NY 10022
Tel. (212) 704-9660
dbhufford@zuckerman.com
jcowart@zuckerman.com

Caroline E. Reynolds, Esq.
ZUCKERMAN SPAEDER LLP
1800 M St. NW, Suite 1000
Washington, DC 20036
Tel. (202) 778-1800
creynolds@zuckerman.com

*Additional counsel listed on next page*

Kristen G. Marttila, Esq.
Derek C. Waller, Esq.
LOCKRIDGE GRINDAL NAUEN, P.L.L.P
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tel. (612) 339-6900
kgmarttila@locklaw.com
dcwaller@locklaw.com

# SUMMARY OF THE CASE

Plaintiffs Smith and Ghanim are participants in self-funded employer-sponsored health benefit plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). Defendants (collectively, "United") administer Plaintiffs' plans. Plaintiffs' plans owed Plaintiffs benefits for out-of-network care. United agreed to send the benefit payments, on Plaintiffs' behalf, directly to Plaintiffs' doctors. United withdrew the correct amounts from the plans, but instead of sending it all to Plaintiffs' doctors, United kept some for itself. United says it kept the money to "offset" overpayments it paid the same doctors on behalf of *other* participants in *other* plans that were fully insured by United. Plaintiffs challenge these "cross plan offsets" as per se illegal because, regardless of any authorizing plan language, they violate ERISA's prohibited transaction rules and United's fiduciary duties. United moved to dismiss for lack of Article III standing, which required the district court to assume that on the merits Plaintiffs would succeed on their claims that United illegally took plan assets owed to them. The district court, however, did the opposite, and notwithstanding Plaintiffs' allegations and legal claims, held that Plaintiffs lack any cognizable injury because their plans purport to authorize offsets. This turns Article III standing analysis upside down and must be reversed.

Plaintiffs request 20 minutes of oral argument to address the proper application of Article III standing jurisprudence to the facts alleged.

i

# TABLE OF CONTENTS

**Page**

SUMMARY OF THE CASE ..................................................................... i

TABLE OF CONTENTS ....................................................................... ii

TABLE OF AUTHORITIES .................................................................. iv

JURISDICTIONAL STATEMENT ........................................................ 1

STATEMENT OF ISSUES AND APPOSITE AUTHORITIES ............. 1

STATEMENT OF THE CASE ............................................................... 2

    I.    Factual Background ................................................................. 2

        A.   United's Failure to Pay, in Full, the Benefits Due to Plaintiffs ............ 4

        B.   United's Cross-Plan Offsetting Scheme ................................. 8

        C.   Courts and the Department of Labor Warn that United's Cross-Plan Offsets Likely Violate ERISA, Regardless of Plan Language ............ 10

        D.   United Adds Plan Language in an Attempt to Skirt *Peterson* and Justify Continuing its Cross-Plan Offset Scheme. ............... 12

    II.   Procedural History ................................................................. 12

SUMMARY OF THE ARGUMENT ..................................................... 14

ARGUMENT ........................................................................................ 16

    I.    Standard of Review ................................................................ 16

    II.   The District Court Erred By Applying the Wrong Standard of Review When Assessing Plaintiffs' Standing ........................... 16

        A.   The District Court Should Have Assumed that Plaintiffs Would Succeed on the Merits of their Claims that Cross-Plan Offsets Violate ERISA, but it Assumed the Opposite ........................ 17

Appellate Case: 23-2369    Page: 4    Date Filed: 08/28/2023 Entry ID: 5310869

B.   Plan Language that Violates ERISA is Unenforceable as a
Matter of Law ....................................................................22

III.   The District Court Erred by Holding that Plaintiffs Did Not
Plausibly Allege Article III Injuries-in-Fact ...............................24

A.   Plaintiffs Suffered a Concrete Injury in Fact When United Failed
to Pay Benefits Due to Plaintiffs as Required by their Plans and
ERISA ...............................................................................26

1.   The Contractual Entitlement to Benefits Belongs to Plaintiffs,
Not to Their Providers....................................................29

2.   Under *Mitchell*, Balance Billing is Not Required for
Non-Payment of Benefits to Cause Concrete Injury-in-Fact.........30

B.   Plaintiffs Suffered a Concrete Injury Because United's
Payments-by-Offset Are Less Valuable Than Cash Payments ...........32

C.   Plaintiffs Allege Injuries that Have Traditionally Been
Recognized as a Basis for Lawsuits in American Courts  and
Satisfy the Requirements Set Forth in *Thole* ........................36

1.   Congressional Judgment Reflects an Intent to Protect
Employees' Benefits by Enacting Strict Fiduciary Standards .......37

2.   Historical Tradition Also Supports a Finding that the
Injuries Plaintiffs Allege are Concrete..........................41

3.   *Thole* Supports Standing in this Case ............................42

CONCLUSION ........................................................................44

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

iii

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aberdeen Ry. Co. v. Blaikie Bros.*,
(1854) 2 L.R. Eq. 1281 (H.L.) ............................................................. 41

*ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*,
645 F.3d 954 (8th Cir. 2011) .............................................. 19, 21, 28

*Am. Farm Bureau Fed'n v. EPA*,
836 F.3d 963 (8th Cir. 2016) ............................................ 18, 19, 21

*Ashanti v. City of Golden Valley*,
666 F.3d 1148 (8th Cir. 2012) ............................................................ 18

*Ben Oehrleins & Sons & Daughter, Inc. v. Hennepin Cnty.*,
115 F.3d 1272 (8th Cir. 1997) ............................................................ 35

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) ........................................ 19, 21, 28, 40

*Brown v. Medtronic, Inc.*,
628 F.3d 451 (8th Cir. 2010) ............................................................. 17

*Carlsen v. GameStop, Inc.*,
833 F.3d 903 (8th Cir. 2016) ...................................... 2, 28, 35, 36

*Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*,
472 U.S. 559 (1985) ...................................................... 1, 22, 38

*Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*,
467 U.S. 837 (1984) ........................................................................... 21

*CIGNA v. Amara*,
563 U.S. 421 (2011) ................................................................. 28, 42

*Clement v. Am. Honda Fin. Corp.*,
176 F.R.D. 15 (D. Conn. 1997) ......................................................... 34

*CRST Expedited, Inc. v. TransAm Trucking, Inc.*,
960 F.3d 499 (8th Cir. 2020) ............................................................. 23

*Curry v. Money One Fed. Credit Union*,
2021 WL 5839432 (D. Md. Dec. 9, 2021) ......................................... 34

*Czyzewski v. Jevic Holding Corp.*,
137 S. Ct. 973 (2017) ......................................................................... 35

iv

*Davoue v. Fanning*,
   2 Johns. Ch. 252 (N.Y. Ch. 1816) ........................................................ 42

*Demarais v. Gurstel Chargo, P.A.*,
   869 F.3d 685 (8th Cir. 2017) .............................................................. 35

*Dep't of Educ. v. Brown*,
   143 S. Ct. 2343 (2023) ..................................................................... 18

*Doe v. United Behav. Health*,
   523 F. Supp. 3d 1119 (N.D. Cal. 2021) ............................................. 23

*Eagle SPE NV I, Inc. v. Kiley Ranch Cmtys.*,
   5 F. Supp. 3d 1238 (D. Nev. 2014) ................................................... 35

*Eisenrich v. Minneapolis Retail Meat Cutters & Food Handlers Pension Plan*,
   574 F.3d 644 (8th Cir. 2009) ......................................................... 21, 23

*Fed. Election Comm'n v. Akins*,
   524 U.S. 11 (1998) ........................................................................... 38

*Fed. Election Comm'n v. Cruz*,
   142 S. Ct. 1638 (2022) ..................................................................... 18

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014) ..................................................................... 23, 38

*Firestone Tire & Rubber Co. v. Bruch*,
   489 U.S. 101 (1989) ............................................................... 37, 39, 41

*Graham v. Catamaran Health Sols. LLC*,
   940 F.3d 401 (8th Cir. 2017) ...................................................... 1, 18, 21

*Grasso Enters., LLC v. Express Scripts, Inc.*,
   809 F.3d 1033 (8th Cir. 2016) ........................................................... 30

*HCA Health Servs. of Ga., Inc. v. Emp'rs Health Ins. Co.*,
   240 F.3d 982 (11th Cir. 2001) ....................................................... 27, 31

*Huizenga v. Indep. Sch. Dist. No. 11*,
   44 F.4th 806 (8th Cir. 2022) ...................................................... 1, 17, 25

*In re Robinson*,
   554 B.R. 800 (Bankr. W.D. La. 2016) ............................................... 35

*In re SuperValu, Inc.*,
   870 F.3d 763 (8th Cir. 2017) .............................. 16, 18, 25, 32, 33

*Jackson v. Smith*,
   254 U.S. 586 (1921) ......................................................................... 42

v

*Johnson v. Griffin*,
   69 F.4th 506 (8th Cir. 2023) ............................................................. 25

*Kaiser Steel Corp. v. Mullins*,
   455 U.S. 72 (1982) ............................................................................ 23

*Keech v. Sandford*,
   (1726) 37, 25 Eng. Rep. 223 (Ch.) ................................................... 41

*Kuhns v. Scottrade, Inc.*,
   868 F.3d 711 (8th Cir. 2017) ..................................................... 3, 28

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .......................................................................... 25

*Magruder v. Drury*,
   235 U.S. 106 (1914) .......................................................................... 42

*McDonough v. Anoka Cnty.*,
   799 F.3d 931 (8th Cir. 2015) ............................................................ 18

*Med. Soc'y of N.Y. v. UnitedHealth Group, Inc.*,
   2021 WL 4263717 (S.D.N.Y. Sept. 20, 2021) ........................... 31, 44

*Mertens v. Hewitt Assocs.*,
   508 U.S. 248 (1993) .......................................................................... 42

*Metro. Life Ins. Co. v. Glenn*,
   554 U.S. 105 (2008) .......................................................................... 39

*Michoud v. Girod*,
   45 U.S. (4 How.) 503 (1846) ............................................................ 41

*Mitchell v. Blue Cross Blue Shield of N.D.*,
   953 F.3d 529 (8th Cir. 2020) ..................................................... *passim*

*Muir v. Navy Fed. Credit Union*,
   529 F.3d 1100 (D.C. Cir. 2008) ................................................. 18, 22

*N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*,
   781 F.3d 182 (5th Cir. 2015) ............................................ 26, 29, 30, 31

*Nachman Corp. v. Pension Ben. Guar. Corp.*,
   446 U.S. 359 (1980) .......................................................................... 37

*Perks v. TD Bank, N.A.*,
   2022 WL 1451753 (S.D.N.Y. May 9, 2022) .................................... 34

*Peterson on behalf of Patients E, I, K, L, N, P, Q, and R v. UnitedHealth Grp. Inc.*,
   242 F. Supp. 3d 834 (D. Minn. 2017) ("*Peterson I*") .................... 10

Appellate Case: 23-2369    Page: 8    Date Filed: 08/28/2023 Entry ID: 5310869

*Peterson on behalf of E v. UnitedHealth Grp. Inc.*,
913 F.3d 769 (8th Cir. 2019) ("*Peterson II*") ................................................. 10, 30

*Pub. Citizen v. U.S. Dep't of Just.*,
491 U.S. 440 (1989) ................................................................................. 38

*Red River Freethinkers v. City of Fargo*,
679 F.3d 1015 (8th Cir. 2012)............................................................................. 18

*Scott v. UnitedHealth Grp., Inc.*,
540 F. Supp. 3d 857 (D. Minn. 2021) ................................................................ 43

*Seeger v. AFNI, Inc.*,
548 F.3d 1107 (7th Cir. 2008)............................................................................ 35

*Southcentral Found. v. Alaska Native Tribal Health Consortium*,
983 F.3d 411 (9th Cir. 2020)............................................................................. 38

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*,
770 F.3d 1282 (9th Cir. 2014)....................................................................... 27, 31

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........................................................................... 2, 36, 38

*Springer v. Cleveland Clinic Emp. Health Plan Total Care*,
900 F.3d 284 (6th Cir. 2018)....................................................................... 27, 31

*Stuart v. State Farm Fire & Cas. Co.*,
910 F.3d 371 (8th Cir. 2018)............................................................................. 28

*Teamsters Local Union 682 v. KCI Constr. Co.*,
384 F.3d 532 (8th Cir. 2004)............................................................................. 23

*Thole v. U.S. Bank, N.A.*,
140 S. Ct. 1615 (2020) ................................................................. 36, 42, 43, 44

*TransUnion, LLC v. Ramirez*,
141 S. Ct. 2190 (2021) .............................................................. 2, 24, 27, 36, 40

*United States v. Carter*,
217 U.S. 286 (1910) ................................................................................. 42

*United States v. Mead Corp.*,
533 U.S. 218 (2001) ................................................................................. 21

*Varga v. U.S. Bank Nat'l. Ass'n.*,
764 F.3d 833 (8th Cir. 2014)....................................................................... 17, 18

*Varity Corp. v. Howe*,
516 U.S. 489 (1996) ........................................................................... 37, 39, 41

Appellate Case: 23-2369    Page: 9    Date Filed: 08/28/2023 Entry ID: 5310869

*Warth v. Seldin*,
422 U.S. 490 (1975) ................................................................ 19

*Whelpdale v. Cookson*,
(1747) 27 Eng. Rep. 856 (Ch.) .............................................. 41

*Wit v. United Behav. Health*,
2023 WL 5356640 (9th Cir. Aug. 22, 2023) ......................... 42

**Statutes**

28 U.S.C. § 1291 ......................................................................... 1

28 U.S.C. § 1331 ......................................................................... 1

29 U.S.C. § 1001(a) ................................................................... 39

29 U.S.C. § 1104(a) ........................................................... *passim*

29 U.S.C. § 1106 ................................................................ *passim*

29 U.S.C. § 1109 ........................................................... 2, 29, 40

29 U.S.C. § 1110(a) ................................................................... 22

29 U.S.C. § 1132(a)(2) ................................................... 2, 29, 40

29 U.S.C. § 1132(e)(1) ................................................................ 1

29 U.S.C. § 1133 ........................................................... 21, 37, 38

29 U.S.C. § 1135 ....................................................................... 21

**Rules**

Fed. R. Civ. P. 8(a)(1) .............................................................. 17

Fed. R. Civ. P. 8(a)(2) .............................................................. 17

Fed. R. Civ. P. 12(b)(1) ........................................... 14, 16, 17, 18

Fed. R. Civ. P. 12(b)(6) .................................................... 17, 18

**Other Authorities**

3 Austin Wakeman Scott et al., *Scott and Ascher on Trusts* § 17.2
(5th ed. 2007) ....................................................................... 41

Bogert's Law of Trusts & Trustees § 862 (Update June 2020) ............................. 41

Appellate Case: 23-2369     Page: 10     Date Filed: 08/28/2023 Entry ID: 5310869

Brief for the Secretary of Labor as Amicus Curiae in Support of Plaintiffs-Appellees, *Peterson v. UnitedHealth Grp.*, 913 F.3d 769 (8th Cir. 2019) (No. 17-1744), 2017 WL 3994970 ("DOL Brief")................................. 11, 21, 22

Restatement (Third) of Trusts § 78(1) ..................................................... 41

U.S. Const. art. III ............................................................................. *passim*

ix

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction under 28 U.S.C. § 1331 because the claims arise under ERISA, 29 U.S.C. § 1132(e)(1). This Court has jurisdiction pursuant to 28 U.S.C. § 1291 because the district court entered final judgment for United on all claims on May 4, 2023, and Plaintiffs timely filed a notice of appeal on June 5, 2023.

## STATEMENT OF ISSUES AND APPOSITE AUTHORITIES

1.      Whether the district court applied an incorrect standard for assessing Article III standing by deciding, against Plaintiffs, the merits of Plaintiffs' central legal claim that United's cross-plan offsets are prohibited transactions that violate ERISA, making plan terms purporting to authorize such offsets void and unenforceable.

Most apposite authority: *Huizenga v. Indep. Sch. Dist. No. 11*, 44 F.4th 806, 811 (8th Cir. 2022); *Graham v. Catamaran Health Sols. LLC*, 940 F.3d 401, 407 (8th Cir. 2017); *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 568 (1985); ERISA § 404(a)(1)(D), codified at 29 U.S.C. § 1104(a)(1)(D); ERISA § 406, codified at 29 U.S.C. § 1106.

2.      Whether the district court erred in finding that Plaintiffs had not suffered any concrete injury when the Complaint plausibly alleged: (a) that United's illegal cross-plan offsets did not qualify as actual payment of the benefits Plaintiffs'

1

plans owed to Plaintiffs; (b) that, even if cross-plan offsets had any value to Plaintiffs, the offsets were not as valuable as cash payments; and (c) that United's fiduciary breaches and self-dealing in connection with its administration and payment of Plaintiffs' benefits caused injuries that have traditionally been justiciable in American courts.

Most apposite authority: U.S. Const. art. III; *TransUnion, LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021); *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016); *Mitchell v. Blue Cross Blue Shield of N.D.*, 953 F.3d 529, 536 (8th Cir. 2020); *Carlsen v. GameStop, Inc*., 833 F.3d 903, 909 (8th Cir. 2016); ERISA § 404(a), codified at 29 U.S.C. § 1104(a); ERISA § 406, codified at 29 U.S.C. § 1106; ERISA § 409, codified at 29 U.S.C. § 1109; ERISA § 502(a)(2), codified at 29 U.S.C. § 1132(a)(2).

## STATEMENT OF THE CASE

### I.    Factual Background

Plaintiffs Rebecca Smith and Christine Ghanim are participants[1] in two employer-sponsored health plans governed by ERISA. First Am. Class Action Compl. (Sept. 30, 2022) ("Compl."), App. 9; R. Doc. 35, at 9 (¶¶ 14-15). Both plans are self-funded, meaning that Plaintiffs' and other plan members' contractually

---

[1] In this brief, Plaintiffs use the terms "participant" and "member" interchangeably to refer to the participants and beneficiaries of ERISA plans.

Appellate Case: 23-2369      Page: 13      Date Filed: 08/28/2023 Entry ID: 5310869

defined benefits are paid from the plans' assets, which the plan members fund along with contributions from their employers. App. 2, 9, 19; R. Doc. 35, at 2, 9, 19 (¶¶ 2, 14-15, 43).

United is the fiduciary claims administrator for both plans, and is responsible for processing claims for healthcare benefits pursuant to ERISA and the written terms of the plans insofar as those plan terms comply with ERISA. App. 1-2, 7-8, 20; R. Doc. 35, at 1-2, 7, 20 (¶¶ 1, 12, 44). United also controls the plans' assets and is solely responsible for issuing payment of benefits due to plan members, on the plans' behalf, from those assets. App. 2, 20-21; R. Doc. 35, at 2, 20-21 (¶¶ 1, 44-48).

Plaintiffs' ERISA plans cover services from both in-network and out-of-network healthcare providers.[2] *See, e.g.*, App. 192, 211; R. Doc. 45-1, at 3, 22.[3] When a plan member receives covered services from an out-of-network provider, the plans promise the member "will receive payment for Benefits that the Plan

---

[2] Providers who participate in United's network ("network" or "in-network" providers) have an ongoing contractual relationship with United and must agree to accept payment according to United's reimbursement policies (including cross-plan offsets). App. 24-25; R. Doc. 35, at 24-25 (¶¶ 55-56). No such requirements bind providers who do not participate in the network (i.e., "out-of-network" or "non-network" providers). *Id*.

[3] Reviewing the district court's order *de novo*, this Court may review materials "necessarily embraced" by Plaintiffs' Complaint, *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 715 (8th Cir. 2017), including excerpts from Plaintiffs' summary plan descriptions, which United submitted in support of its motion to dismiss. *See generally* App. 191-226; R. Doc. 45-1, at 2-37.

Appellate Case: 23-2369    Page: 14    Date Filed: 08/28/2023 Entry ID: 5310869

allows," and specify that it is the member's "responsibility to pay the [out-of-network] provider the charges [she] incurred, including any difference between what [the member was] billed and what the Plan paid." App. 193, 212; R. Doc. 45-1, at 4, 23. In practice, as an administrative matter, United typically sends payment of the plan member's benefits directly to the provider on the plan member's behalf. App. 2; R. Doc. 35, at 2 (¶ 1); *see also* App. 193, 212; R. Doc. 45-1, at 4, 23. United then sends the member an Explanation of Benefits ("EOB") explaining how it adjudicated the claim and the amount of benefits paid. App. 38, 39, 41; R. Doc. 35, at 38, 39, 41 (¶¶ 87, 90, 95).

### A. United's Failure to Pay, in Full, the Benefits Due to Plaintiffs

Both Plaintiffs received covered healthcare services from their healthcare providers. App. 33-34, 39, 41; R. Doc. 35, at 33-34, 39, 41 (¶¶ 75, 89, 95). Both providers billed Plaintiffs for their professional services. App. 33-36, 39, 41; R. Doc. 35, at 33-36, 39, 41 (¶¶ 75, 78, 81, 89, 95).

Plaintiffs' providers were not members of United's network, and neither had any ongoing contractual relationship with United. App. 24-25, 34, 39; R. Doc. 35, at 24-25, 34, 39 (¶¶ 56, 76, 89). As a courtesy to Plaintiffs, each Plaintiff's provider submitted to United, on the Plaintiff's behalf, a claim for benefits under the Plaintiff's plan for the provider's full billed charge. App. 33-34, 39, 95; R. Doc. 35, at 33-34, 39, 95 (¶¶ 75, 89, 95).

4

United processed the claims and determined that each Plaintiff's plan owed the participating Plaintiff a specific dollar amount of benefits for the services she received. App. 7-8, 36, 39, 41; R. Doc. 35, at 7-8, 36, 39, 41 (¶¶ 12, 81, 90, 95). It was United's job, on behalf of the plans, to pay from each plan's assets the full amount of benefits due to the corresponding Plaintiff. App. 2, 4, 8, 19-20; R. Doc. 35, at 2, 4, 8, 19-20 (¶¶ 1, 5, 12, 43-45); App. 193, 212; R. Doc. 45-1, at 4, 23 (statement in both Plaintiffs' plans that "[a]fter UnitedHealthcare has processed your claim, you will receive payment for Benefits that the Plan allows."). Even though the benefits were owed to Plaintiffs, United was supposed to send the payments directly to each Plaintiff's provider, App. 36, 39, 41; R. Doc. 35, at 36, 39, 41 (¶¶ 81-82, 90, 95), and it sent the Plaintiffs EOBs representing that it did so. App. 38, 39, 41; R. Doc. 35, at 38, 39, 41 (¶¶ 87, 90, 95).[4]

United, however, did not send the providers monetary payment of the full amount of benefits due to the Plaintiffs. Although United determined that Ms. Smith's Plan owed her a total of $42,082.13 in benefits, it sent payment of only $39,458.99 to her provider on her behalf. App. 36-37; R. Doc. 35, at 36-37 (¶¶ 81-82). Likewise, United determined that Ms. Ghanim's Plan owed her $8,015.88 in

---

[4] Plaintiffs' plans state that the plan participant remains the "beneficiary" of the payment, even if United makes "payment of the benefits directly to the provider." App. 193, 212; R. Doc. 45-1 at 4, 23.

5

benefits for her first claim, but it did not send any money to her or her provider at all. App. 39; R. Doc. 35, at 39 (¶¶ 89-91). United later determined that Ms. Ghanim's Plan owed her a total of $5,892.25 for four subsequent claims, but it sent just $2,949.31 to her provider. App. 41; R. Doc. 35, at 41 (¶ 95).

In each case, United told the Plaintiffs' providers that it kept some or all of the benefits due to each Plaintiff because, United claimed, it had previously overpaid the provider for benefits due to a ***different*** patient for services covered under a ***different*** plan. App. 37-38, 39-41; R. Doc. 35, at 37-38, 39-41 (¶¶ 83-84, 91-92, 95). United told the providers that it retained some or all of the Plaintiffs' benefits to "reduce" (i.e., "offset") the purported overpayments it had made on behalf of those other patients' plans. App. 38, 40; R. Doc. 35, at 38, 40 (¶¶ 86, 93). United did not tell the Plaintiffs that that some of their benefits were kept by United for this purpose. App. 36-40; R. Doc. 35, at 36-40 *(*¶¶ 81-83, 87-88, 90-92).

Both Plaintiffs' providers disputed that any overpayment had been made in those other patients' cases. App. 8, 37-38, 40; R. Doc. 35, at 8, 37-38, 40 (¶¶ 12, 84, 92). Neither provider agreed to resolve the disputed overpayment through an offset. App. 8; R. Doc. 35, at 8 (¶ 12). Critically, as out-of-network providers, neither provider had any pre-existing contractual obligation to accept offsets as payment. App. 24-25, 34, 39; R. Doc. 35, at 24-25, 34, 39 (¶¶ 56, 76, 89). Nor did either provider agree to accept an offset as payment for the services rendered to the

Appellate Case: 23-2369    Page: 17    Date Filed: 08/28/2023 Entry ID: 5310869

Plaintiffs. App. 8; R. Doc. 35, at 8 (¶ 12). Moreover, neither Plaintiff's provider agreed to forego payment for the unpaid balance of their bills after United paid only part of the benefits it determined were due under the Plaintiffs' plans. App. 33-37, 39, 41; R. Doc. 35, at 33-37, 39, 41 (¶¶ 75, 78, 82, 89, 95). Ms. Smith's provider agreed to ***adjust*** the billed amount, but that agreement contemplated full payment of the adjusted bill, and stated that the agreement would become null and void if the adjusted amount was not paid. App. 34-35; R. Doc. 35, at 34-35 (¶¶ 77-79).[5] And Ms. Ghanim's provider did not enter into any agreements with United at all. *See generally* App. 39-41; R. Doc. 35, at 39-41 (¶¶ 89-95). Plaintiffs' allegations, taken as true, mean that despite United's unilateral assertions to the contrary, the Plaintiffs' debts to their providers still remain outstanding. App. 24-25, 33-37, 39-41; R. Doc. 35, at 24-25, 33-37, 39-41 (¶¶ 56, 75, 78-79, 82, 90-91, 95).

---

[5] The district court erroneously stated that Ms. Smith's provider agreed not to balance bill her at all. App. 72; R. Doc. 60, at 19. This is incorrect. As alleged in the Complaint, Ms. Smith's provider charged a total of $109,360.00 for her surgery. App. 33-35; R. Doc. 35, at 33-35 (¶¶ 75-78). After United initially refused to "allow" over 98% of that billed charge, its agent agreed with the provider that United would set the allowed amount at $56,390.18, and the provider would not bill Ms. Smith for the difference between that ***adjusted allowed amount*** and the "***original billing amount***." App. 34; R. Doc. 35, at 34 (¶ 77) (emphasis added). Contrary to the district court's mistaken understanding, Ms. Smith's provider never agreed to forego payment of the full allowed amount of $56,390.18. *Id.*; *see also id.*, App. 33-35; R. Doc. 35, at 33-35 (¶¶ 75-78); and App. 436; R. Doc. 58, at 2 (drawing district court's attention to relevant allegations in Complaint). As discussed above, *supra* p. 5, United paid the provider only $39,458.99, leaving Ms. Smith responsible for the remainder.

Appellate Case: 23-2369     Page: 18     Date Filed: 08/28/2023 Entry ID: 5310869

For both Plaintiffs, the other plan (to which United sent the portions of Plaintiffs' benefits it used as an "offset") was a fully insured plan underwritten by United. App. 38, 40; R. Doc. 35, at 38, 40 (¶¶ 87, 92). Whereas covered healthcare expenses under Plaintiffs' self-funded plans are paid from the plans' assets, which are funded through employer and employee contributions, under fully insured plans, United pays the benefits due under the plan from its own assets. App. 35; R. Doc. 35, at 1-2 (¶¶ 1-2). Because United used benefits due to Plaintiffs from their self-funded plans to recoup purported overpayments made by United from fully insured plans, the end result was that United took some or all of the self-funded plan assets it was supposed to use to pay the benefits due to Plaintiffs on behalf of those plans and, instead, placed those funds in its own accounts. App. 38, 40, 41; R. Doc. 35, at 38, 40, 41 (¶¶ 87, 92, 95). In other words, United took—and kept—assets of Plaintiffs' plans that were supposed to be paid to Plaintiffs.

### B. United's Cross-Plan Offsetting Scheme

As explained above, Plaintiffs were victims of a practice known as "cross-plan offsetting," a scheme United regularly uses to claw back payments it previously issued to out-of-network providers (with whom it has no ongoing contractual relationship). App. 2-3, 11-13, 24-25; R. Doc. 35, at 2-3, 11-13, 24-25 (¶¶ 2-4, 26-27, 56). A cross-plan offset occurs when United decides—unilaterally and without any legal confirmation—that it has caused one of the plans it administers ("Plan A")

8

to overpay benefits when payment was made directly to an out-of-network provider on behalf of the patient ("Participant A"). App. 2, 11-12, 16; R. Doc. 35, at 2, 11-12, 16 (¶¶ 2, 26, 35). Instead of taking legal action against the provider or Participant A to prove and recover the overpayment, United identifies a different plan ("Plan B") that owes benefits to a different patient ("Participant B") for services rendered by the same provider. App. 2, 11-12, 16; R. Doc. 35, at 2, 11-12, 16 (¶¶ 2, 26, 35). Rather than causing Plan B to pay the full amount of benefits due to Participant B by sending a cash payment directly to the provider, United diverts some or all of the Plan B money to Plan A to recover its alleged overpayment. App. 2, 7-8, 11-12, 15-16; R. Doc. 35, at 2, 7-8, 11-12, 15-16 (¶¶ 2, 12, 26, 34). Because United includes its own fully insured plans in this scheme—meaning that it actually pockets the money "recovered" by fully-insured Plan As—United itself is by far the biggest beneficiary of its cross-plan offsetting scheme. App. 1-3; R. Doc. 35, at 1-3 (¶¶ 1, 3). Although United also employs cross-plan offsets between two self-funded plans (and charges the plans a fee when it does), App. 3, 12-13; R. Doc. 35, at 3, 12-13 (¶¶ 4, 27), United makes hundreds of millions of dollars annually by systematically using cross-plan offsets to funnel assets from self-funded Plan Bs—earmarked to pay benefits to those plans' participants—to fully insured Plan As. App. 2-3, 28; R. Doc. 35, at 2-3, 28 (¶¶ 2-3, 63). In other words, these plan funds go straight into United's coffers.

Appellate Case: 23-2369    Page: 20    Date Filed: 08/28/2023 Entry ID: 5310869

**C.    Courts and the Department of Labor Warn that United's Cross-Plan Offsets Likely Violate ERISA, Regardless of Plan Language**

United's practice of cross-plan offsetting was previously challenged by providers who, on behalf of their patients, sued under ERISA to recover benefits due under the patients' plans. *Peterson on behalf of Patients E, I, K, L, N, P, Q, and R v. UnitedHealth Grp. Inc.*, 242 F. Supp. 3d 834 (D. Minn. 2017) ("*Peterson I*"); *see also* App. 5-6; R. Doc. 35, at 5-6 (¶ 8). The district court in that case held that the terms of the plans did not authorize the cross-plan offsets. *Peterson I*, 242 F. Supp. 3d at 845; App. 5-6; R. Doc. 35, at 5-6 (¶ 8). This Court upheld that ruling on appeal. *Peterson on behalf of E v. UnitedHealth Grp. Inc.*, 913 F.3d 769, 777 (8th Cir. 2019) ("*Peterson II*"); App. 5-6; R. Doc. 35, at 5-6 (¶ 8).

In rejecting the cross-plan offsets in *Peterson I* and *II*, both the district court and this Court expressed serious concerns about whether cross-plan offsets could ***ever*** comply with ERISA, even if plan language purported to permit them. The district court stated, "[i]t is fairly debatable whether cross-plan offsetting is ever permissible under ERISA," but "[i]t is not fairly debatable, however, that the type of cross-plan offsetting challenged in this case—that is, cross-plan offsetting engaged by an administrator who insures some (but not all) of the plans—presents a grave conflict of interest." *Peterson I*, 242 F. Supp. 3d at 845; *see also* App. 5-6; R. Doc. 35, at 5-6 (¶ 8). Similarly, this Court noted that, although it did not need to

Appellate Case: 23-2369    Page: 21    Date Filed: 08/28/2023 Entry ID: 5310869

decide in *Peterson II* "whether cross-plan offsetting necessarily violates ERISA, at the very least it approaches the line of what is permissible" and warned United that "[r]egardless of whether cross-plan offsetting necessarily violates ERISA, it is questionable at the very least." *Peterson II*, 913 F.3d at 776-77; App. 5-6; R. Doc. 35, at 5-6 (¶ 8).

Significantly, the Department of Labor ("DOL"), the federal agency responsible for interpreting and overseeing ERISA, filed an *amicus* brief in *Peterson II* arguing that cross-plan offsets are inherently illegal under ERISA. Brief for the Secretary of Labor as Amicus Curiae in Support of Plaintiffs-Appellees, *Peterson v. UnitedHealth Grp.*, 913 F.3d 769 (8th Cir. 2019) (No. 17-1744 ), 2017 WL 3994970 (hereafter, "DOL Brief"); App. 6; R. Doc. 35, at 6 (¶ 9). The DOL explained that "United's practice of cross-plan offsetting violated United's fiduciary duties under ERISA to act exclusively in the plan participants' interests and to provide participants their plan benefits and was self-dealing prohibited by ERISA," and that "these transactions were structured by United to allow United to profit by recouping its own alleged overpayments from its fully insured plans that are funded through its own accounts with payments from self-funded plans that are funded by plan sponsors and their employees." *Id.* at *6-7; App. 6; R. Doc. 35, at 6 (¶ 9).

11

### D. United Adds Plan Language in an Attempt to Skirt *Peterson* and Justify Continuing its Cross-Plan Offset Scheme.

Rather than heeding the warnings from this Court, the district court, and the DOL that cross-plan offsetting likely ***always*** violates ERISA, United continued to operate its scheme. App. 6-7; R. Doc. 35, at 6-7 (¶¶ 10-11). Its only response to *Peterson* was to incorporate new language in many plans and Summary Plan Descriptions ("SPDs") that purports to authorize cross-plan offsets, App. 6-7; R. Doc. 35, at 6-7 (¶ 10), and to make it necessary for self-funded plans to opt out of the scheme, rather than allowing them to opt in. App. 6-7, 16, 22; R. Doc. 35, at 6-7, 16, 22 (¶¶ 10, 36, 51). The new plan language states:

> Payment of Benefits under the Plan shall be in cash or cash equivalents, or in the form of other consideration that UnitedHealthcare in its discretion determines to be adequate. Where Benefits are payable directly to a provider, such adequate consideration includes the forgiveness in whole or in part of amounts the provider owes to other plans for which UnitedHealthcare makes payments, where the Plan has taken an assignment of the other plans' recovery rights for value.

App. 14; R. Doc. 35, at 14 (¶ 31).[6] Both Plaintiffs' plans contain this new term. *Id.*

### II. Procedural History

Plaintiffs filed this suit against United to challenge its cross-plan offsetting scheme. On behalf of their plans, Plaintiffs allege that United breached its ERISA

---

[6] Despite this language, as alleged in the Complaint, the plans United subjects to cross-plan offsets do not execute written assignments transferring the recovery rights for particular benefit payments. App. 22; R. Doc. 35, at 22 (¶ 51).

fiduciary duty of loyalty when it engaged in cross-plan offsetting and misappropriated plan assets that were supposed to be used to pay benefits to Plaintiffs and similarly-situated plan participants. App. 45-46; R. Doc. 35, at 45-46 (Compl., Count I). Plaintiffs further allege that United's cross-plan offsets were prohibited transactions in violation of ERISA, 29 U.S.C. § 1106, because United not only represented both sides of the cross-plan offset transactions (even though their interests were adverse), but United also dealt with the assets of Plaintiffs' plans in its own interest and transferred plan assets to itself when it engaged in its self-dealing self-help scheme. App. 46-49; R. Doc. 35, at 46-49 (Compl., Counts II-IV). Finally, Plaintiffs allege that by hiding the illegal offsets from Plaintiffs, United deprived them of their right to appeal the adverse benefit determinations. App. 50; R. Doc. 35, at 50 (Compl., Count V).

United filed a motion to dismiss challenging, among other things, Plaintiffs' Article III standing. App. 134; R. Doc. 41, at 1; App. 151-57; R. Doc. 43, at 11-17. United argued that Plaintiffs did not suffer any cognizable injury because United was authorized by the plans' written terms to pay their benefits with offsets. App. 156; R. Doc. 43, at 16.

The district court granted United's motion to dismiss, holding that Plaintiffs did not plausibly allege a concrete injury-in-fact sufficient to give rise to Article III standing. App. 54, 68-69, 77; R. Doc. 60, at 1, 15-16, 24. Relying on the plan

language "that expressly permit[s] cross-plan offsetting," and its acceptance as fact that "United paid Plaintiffs' providers through some combination of cash and offsets," the district court held that Plaintiffs "have not plausibly pleaded that United denied them a contractually-guaranteed benefit under the Plans." App. 67; R. Doc. 60, at 14.

## SUMMARY OF THE ARGUMENT

The district court dismissed the action for lack of Article III standing, relying on its holding that because the Plaintiffs' plans' terms permit cross-plan offsets, the Plaintiffs could not have suffered a concrete injury-in-fact when United paid their benefits through offsets rather than in cash. *See, e.g.*, App. 69; R. Doc. 60, at 16. This was error, however, because by resolving a central merits issue against Plaintiffs, the district court applied the incorrect standard of review for a Rule 12(b)(1) motion to dismiss for lack of standing. The district court, instead, should have assumed that the Plaintiffs would be successful in their central merits claim that cross-plan offsets are prohibited transactions that necessarily violate ERISA and breach United's fiduciary duties. Because plan terms that violate ERISA are unenforceable as a matter of law, when analyzing Plaintiffs' injury, the court should have construed Plaintiffs' plans without considering the illegal terms. The district court, however, did the opposite. *See* Argument § II.

14

Building on its initial error, the district court further erred in analyzing each of Plaintiffs' allegations of injury-in-fact. First, the court erroneously rejected Plaintiffs' allegations of injury from the non-payment of their benefits based on its improper merits ruling that United's cross-plan offsets were a permissible method of paying Plaintiffs' benefits. *See* Argument § III.A. The district court also held, contrary to binding precedent from this Court, that United's failure to pay Plaintiffs the benefits they were owed did not injure Plaintiffs because their providers have not yet sought to collect on the debts the Plaintiffs owe them. To the contrary, as this Court held in *Mitchell v. Blue Cross Blue Shield of N.D.*, 953 F.3d 529, 536 (8th Cir. 2020), a denial of benefits injures an ERISA plan participant regardless of whether their provider has sent a "balance bill." *See* Argument § III.A.

Second, the court erred in ignoring Plaintiffs' allegations that United's unilateral decision to "offset" an uncollectable, phantom debt that Plaintiffs' providers disputed—and critically, did not agree to accept as payment in any event—was worth less ***to Plaintiffs*** than a payment in cash of the full amount of benefits due. *See* Argument § III.B.

Third, the court also failed to accept Plaintiffs' allegations of injuries-in-fact arising from United's egregious breaches of the fiduciary duties it owed Plaintiffs, under ERISA, in administering the very benefit payments it stole from Plaintiffs when it subjected them to the cross-plan offsets. *See* Argument § III.C. Centuries of

Appellate Case: 23-2369    Page: 26    Date Filed: 08/28/2023 Entry ID: 5310869

historical practice, enacted into federal law when Congress built ERISA on trust-law foundations and expressly imposed stringent fiduciary duties on those who administer plan benefits, make clear that a beneficiary has a cognizable legal interest in her fiduciary's loyal conduct. As such, a faithless fiduciary who betrays its beneficiary by misusing trust assets intended for the beneficiary plainly causes a concrete injury. *Id.*

For all these reasons, the district court's order dismissing the action for lack of Article III standing should be reversed.

## ARGUMENT

### I.   Standard of Review

This Court reviews *de novo* the grant of a Rule 12(b)(1) motion to dismiss for lack of Article III standing, "accepting the material allegations in the complaint as true and drawing all inferences in plaintiffs' favor." *In re SuperValu, Inc.*, 870 F.3d 763, 768 (8th Cir. 2017).

### II.   The District Court Erred By Applying the Wrong Standard of Review When Assessing Plaintiffs' Standing

The district court rejected each of Plaintiffs' injury arguments, at least in part, because it erroneously held that United's offsets constituted full and valid payment of Plaintiffs' benefits. App. 67-69; R. Doc. 60, at 14-16. The court acknowledged that whether "using an offset rather than a cash payment is a 'denial of benefits'" presents a legal question, App. 67; R. Doc. 60, at 14, but reasoned that it was not

16

"required to accept 'legal conclusions couched as factual allegations'" when assessing Plaintiffs' standing on a motion to dismiss. App. 66-67; R. Doc. 60, at 13-14 (citation omitted). In so ruling, however, the district court applied the incorrect standard of review for a Rule 12(b)(1) motion to dismiss for lack of Article III standing.

### A. The District Court Should Have Assumed that Plaintiffs Would Succeed on the Merits of their Claims that Cross-Plan Offsets Violate ERISA, but it Assumed the Opposite

The district court stated that its task was to determine "whether the complaint has alleged enough facts, accepted as true with all reasonable inferences drawn in Plaintiffs' favor, **to state a plausible claim to relief**." App. 62-63; R. Doc. 60, at 9-10 (citing *Varga v. U.S. Bank Nat'l. Ass'n.*, 764 F.3d 833, 838 (8th Cir. 2014) (emphasis added)). That was not the correct standard under Rule 12(b)(1), however, as this Court has repeatedly explained:

> "The standing inquiry is merely a threshold inquiry"; it does not present the "higher hurdles" of pleading a claim to relief on the merits under Federal Rule of Civil Procedure 12(b)(6). Pleading jurisdiction requires only "a short and plain statement of the grounds for the court's jurisdiction," while pleading the merits requires not just "a short and plain statement of the claim," but one that "show[s] that the pleader is entitled to relief."

*Huizenga v. Indep. Sch. Dist. No. 11*, 44 F.4th 806, 811 (8th Cir. 2022) (citations omitted) (quoting *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459 (8th Cir. 2010) and Fed. R. Civ. P. 8(a)(1) & (2)). Unlike a court's analysis under Rule 12(b)(6),

17

"[s]tanding analysis does not permit consideration of the actual merits of a plaintiff's claim." *Graham v. Catamaran Health Sols. LLC*, 940 F.3d 401, 407 (8th Cir. 2017); *see also, e.g.*, *Am. Farm Bureau Fed'n v. EPA*, 836 F.3d 963, 968 (8th Cir. 2016) ("'The standing inquiry is not, however, an assessment of the merits of a plaintiff's claim.'") (quoting *Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1023 (8th Cir. 2012)).[7]

It is true that, as on a Rule 12(b)(6) motion, courts ruling on a motion to dismiss under Rule 12(b)(1) must accept the plaintiff's material allegations as true and draw all inferences in the plaintiff's favor. *See, e.g.*, *In re SuperValu*, 870 F.3d at 768. But ***unlike*** the standard for a Rule 12(b)(6) motion, when analyzing standing, courts "must 'assume that on the merits the plaintiffs would be successful in their claims.'" *Am. Farm Bureau*, 836 F.3d at 968 (quoting *Muir v. Navy Fed. Credit Union*, 529 F.3d 1100, 1106 (D.C. Cir. 2008)). *See also, e.g.*, *Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1647-48 (2022) ("For standing purposes, we accept as valid the merits of appellees' legal claims. . . ."); *Dep't of Educ. v. Brown*, 143 S. Ct. 2343,

---

[7] For this reason, the district court's reliance on the *Varga*, *Ashanti*, and *McDonough* cases for its standard of review was misplaced. *See* App. 63; R. Doc. 60, at 10 (citing *Varga*, 764 F.3d at 838 and *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012)); App. 66-67; R. Doc. 60, at 13-14 (quoting *McDonough v. Anoka Cnty.*, 799 F.3d 931, 945 (8th Cir. 2015)). Those three cases all address Rule 12(b)(6) motions to dismiss for failure to state a claim and do not analyze Article III standing at all. *See Varga*, 764 F.3d at 838; *Ashanti*, 666 F.3d at 1150-51; and *McDonough*, 799 F.3d at 944.

2353 (2023) ("[Plaintiffs] think the Plan is substantively unlawful, a merits contention that 'we accept as valid' for purposes of analyzing standing."). This is because "standing in no way depends on the merits" of the plaintiff's claims. *Warth v. Seldin*, 422 U.S. 490, 500 (1975).

For that reason, a court commits reversible error by deciding merits questions when evaluating Article III standing—especially if it decides those questions against the plaintiff, rather than assuming the plaintiff will succeed. *See, e.g.*, *Am. Farm Bureau*, 836 F.3d at 968 (reversing dismissal for lack of standing where court "assesse[d] the merits of the asserted privacy interest" rather than whether the plaintiff association's members "had a legally cognizable interest in preventing the agency's release of their personal information"); *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 960 (8th Cir. 2011) (holding that "[t]he district court erred in deciding the merits of [the plaintiff's] rights" under the collective bargaining agreement at issue, "rather than whether [the plaintiff] had a judicially cognizable interest" in the agreement); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 592 (8th Cir. 2009) ("The district court erred by conflating the issue of Braden's Article III standing with his potential personal causes of action under ERISA.").

The district court, therefore, should have started its standing analysis by accepting as valid Plaintiffs' central contention on the merits: that cross-plan offsets, by their very nature, violate ERISA. App. 4-6, 13-14, 45-49; R. Doc. 35, at 4-6, 13-

19

14, 45-49 (¶¶ 6-9, 29, 110-11, 116, 122, 128-29). As Plaintiffs allege, ERISA expressly prohibits a plan fiduciary from "deal[ing] with the assets of the plan in [its] own interest or for [its] own account," 29 U.S.C. § 1106(b)(1), yet that is exactly what United did when it took assets from the Plaintiffs' plans—funds it was supposed to use to pay Plaintiffs' benefits—and instead placed them in its own account. *See supra* pp. 5-6, 8; App. 7-8, 38, 40-41; R. Doc. 35, at 7-8, 38, 40-41 (¶¶ 12, 87, 92, 95). ERISA prohibits fiduciaries from representing two plans with adverse interests in a transaction, 29 U.S.C. § 1106(b)(2), but United did exactly that when it acted on behalf of both Plaintiffs' self-funded plans and the other, fully insured, plans in the cross-plan offset transactions. *See supra* pp. 8-9; App. 15, 37-38, 40-41; R. Doc. 35, at 15, 37-38, 40-41 (¶¶ 33, 84-87, 92-93, 95). And ERISA imposes a strict duty of loyalty on plan fiduciaries, requiring them to carry out their "duties with respect to a plan solely in the interests of the participants and beneficiaries" of that plan—not some other plan—and "for the exclusive purpose" of "providing benefits" to those plan participants and beneficiaries—not to divert those benefits to some other use, like repaying a disputed debt owed by a third party. 29 U.S.C. § 1104(a)(1). Yet United's cross-plan offsets are specifically designed to allow United to help itself, at the expense of plans and participants, by treating all of

20

the plans it administers as its own personal piggybanks. *See supra* pp. 8-9; App. 2-4, 7-8, 11-13, 19; R. Doc. 35, at 2-4, 7-8, 11-13, 19 (¶¶ 2-5, 11-12, 26-27, 42).[8]

Instead of accepting these allegations as true and assuming that, under ERISA, United could not use cross-plan offsets to "pay" Plaintiffs' benefits, the district court erroneously decided that key merits issue against Plaintiffs. App. 69; R. Doc. 60, at 16 (holding that "United paid the providers for [their] services with debt cancellation or a mix of cash and debt cancellation"); *see also* App. 60, 68; R. Doc. 60, at 7, 15 (similar). This was reversible error. *See, e.g., Graham*, 940 F.3d at 408 (reversing dismissal where district court had based standing analysis on resolution of a question that "goes to the merits, not the threshold standing analysis."); *ABF Freight Sys.*, 645 F.3d at 960 (same); *Braden*, 588 F.3d at 592 (same); *Am. Farm Bureau*, 836 F.3d at 968 (reversing dismissal and stating that plaintiffs "need not prove an

---

[8] Although the plausibility of Plaintiffs' claims is not at issue on United's motion to dismiss for lack of standing, the fact that the DOL itself has opined that United's cross-plan offsetting practice always violates ERISA, notwithstanding plan language, confirms that Plaintiffs' allegations on this point are more than plausible. *See* DOL Brief, 2017 WL 3994970, at *6, 9-15. The Court should give "substantial deference" to the DOL's conclusion. *See, e.g., Eisenrich v. Minneapolis Retail Meat Cutters & Food Handlers Pension Plan*, 574 F.3d 644, 649-50 (8th Cir. 2009) ("Where Congress has delegated authority to an agency to implement an ambiguous statute, we are required to accept the agency's statutory interpretation, so long as it is reasonable.") (citing *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984) and *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001)); 29 U.S.C. § 1135 (delegating to the Secretary of Labor authority to implement ERISA); 29 U.S.C. § 1133 (same).

Appellate Case: 23-2369    Page: 32    Date Filed: 08/28/2023 Entry ID: 5310869

unlawful action to have standing, because 'whether a statute has been violated' is a question that goes to the merits . . . and not to constitutional standing.") (quoting *Muir*, 529 F.3d at 1105-06).

### B. Plan Language that Violates ERISA is Unenforceable as a Matter of Law

Having improperly rejected Plaintiffs' merits claim that cross-plan offsets violate ERISA, the district court doubled down on its error by rejecting each of Plaintiffs' injury theories on the ground that the plans contain language purporting to allow the illegal offsets. App. 67, 69, 75, 77; R. Doc. 60, at 14, 16, 22, 24. But that was error, too, because a plan's terms cannot override ERISA's requirements.

ERISA's prohibited transaction provision explicitly bars plan fiduciaries from causing plans to engage in certain transactions, 29 U.S.C. § 1106, and "renders void any plan provision that relieves a fiduciary of his responsibilities." DOL Brief, 2017 WL 3994970, at *9 (citing, *inter alia*, 29 U.S.C. § 1110(a)). Therefore, United cannot fall back on the plan terms—which United itself wrote to justify its self-serving cross-plan offset scheme, App. 5-7, 13-14; R. Doc. 35, at 5-7, 13-14 (¶¶ 8-10, 28-30)—to justify transactions otherwise prohibited by ERISA. *See, e.g.*, *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.,* 472 U.S. 559, 568 (1985) ("[T]rust documents cannot excuse trustees from their duties under ERISA"); 29 U.S.C. § 1104(a)(1)(D) (requiring plan fiduciaries to follow plan terms, but only "insofar as such documents and instruments are consistent with [ERISA]"); *Fifth*

22

*Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 421 (2014) ("[Section 404(a)(1)(D)] makes clear that the duty of prudence trumps the instructions of a plan document."); *Eisenrich*, 574 F.3d at 648 (holding that plan fiduciaries "may not disregard federal law" when interpreting plan terms); *Doe v. United Behav. Health,* 523 F. Supp. 3d 1119, 1127 (N.D. Cal. 2021) (granting summary judgment against United for applying a plan exclusion that violated ERISA, noting that "multiple circuit courts agree that, in general, plan terms cannot override fiduciary duties") (citing cases, including *Eisenrich*, 574 F.3d at 648). Just as United cannot rely on plan terms to justify its cross-plan offsets if the offsets violate ERISA, the district court may not rely on the very same plan terms to hold that Plaintiffs lack standing to bring their claims that cross-plan offsets violate ERISA.[9]

Had the district court applied the correct standard for standing analysis and accepted Plaintiffs' legal contention that cross-plan offsets violate ERISA, it would have disregarded the unenforceable plan terms purporting to authorize United's illegal cross-plan offset scheme. If the district court analyzed standing from that

---

[9] Courts have "an absolute 'duty to determine whether a contract violates federal law before enforcing it.'" *Teamsters Local Union 682 v. KCI Constr. Co.*, 384 F.3d 532, 537 (8th Cir. 2004) (quoting *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83 (1982)). But "[i]llegal agreements and those in violation of public policy are commonly held to be entirely void and so not contracts at all." *CRST Expedited, Inc. v. TransAm Trucking, Inc.*, 960 F.3d 499, 507 (8th Cir. 2020). As such, the district court should have disregarded the illegal provisions in Plaintiffs' plans.

Appellate Case: 23-2369     Page: 34     Date Filed: 08/28/2023 Entry ID: 5310869

starting point, it would have been obvious that Plaintiffs were injured when United subjected them to the illegal cross-plan offsets in violation of its fiduciary duties. As explained in detail in the next section, the injuries United's illegal and disloyal conduct inflicted on Plaintiffs easily satisfy Article III—several times over.

### III.   The District Court Erred by Holding that Plaintiffs Did Not Plausibly Allege Article III Injuries-in-Fact

The district court dismissed Plaintiffs' complaint because the court concluded Plaintiffs did not "properly plead[] an injury in fact" for Article III standing purposes. App. 63; R. Doc. 60, at 10. This was also reversible error.

Article III of the Constitution guards the separation of powers by "confin[ing] the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion, LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). "For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case— in other words, standing." *Id.*, 141 S. Ct. at 2203 (cleaned up). A plaintiff "must be able to sufficiently answer the question: 'What's it to you?'" *Id.* To do so, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and

(iii) that the injury would likely be redressed by judicial relief." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).[10]

On a motion to dismiss, "a plaintiff need only allege sufficient factual matter, accepted as true, to support a reasonable and plausible inference that she satisfies the elements of Article III standing." *Johnson v. Griffin*, 69 F.4th 506, 510 (8th Cir. 2023) (quotation omitted); *see also Huizenga*, 44 F.4th at 811 ("[P]leading Article III standing requires only 'general allegations of injury, causation, and redressability.'") (quoting *In re SuperValu*, 870 F.3d at 773). Contrary to the district court's ruling, Plaintiffs have more than satisfied this "relatively modest" pleading burden. *Johnson*, 69 F.4th at 510.

In this case, it is easy to answer the question of "what's it to you" with regard to Plaintiffs. They were directly impacted by United's illegal offset scheme because, instead of paying Plaintiffs' benefits in full to Plaintiffs' providers, United helped itself to a portion of those benefit payments and used those funds for its own purposes. While United may seek to defend its practice of using such cross-plan offsets as a method of "paying" benefits, Plaintiffs certainly have a personal stake in challenging United's self-serving conduct. In other words, there is a clear "case and

---

[10] United's motion to dismiss did not challenge the second or third elements of Article III standing, so the district court's ruling addressed only injury-in-fact. App. 63; R. Doc. 60, at 10.

Appellate Case: 23-2369     Page: 36     Date Filed: 08/28/2023 Entry ID: 5310869

controversy" that Plaintiffs have appropriately brought before the court. In holding otherwise, the district court committed reversible error.

### A. Plaintiffs Suffered a Concrete Injury in Fact When United Failed to Pay Benefits Due to Plaintiffs as Required by their Plans and ERISA

The law in this Circuit is clear: ERISA health plan participants suffer an Article III injury-in-fact "when a plan administrator fails to pay a healthcare provider in accordance with the terms of their benefit plan." *Mitchell v. Blue Cross Blue Shield of N.D.*, 953 F.3d 529, 536 (8th Cir. 2020). As this Court explained in *Mitchell*, a failure to pay benefits due under an ERISA plan causes injury to the plan participant because "plan participants are contractually entitled to plan benefits" and "the wrongful denial of plan benefits breaches the parties' contract and deprives the participant[s] of the benefit of their bargain." *Id*. Reasoning that because a party to a breached contract has a judicially cognizable injury for standing purposes and that Congress sought to protect contractually defined benefits in ERISA, the Court concluded that "history and the judgment of Congress both indicate that the denial of plan benefits constitutes a cognizable injury in fact for purposes of constitutional standing." *Id*.[11]

---

[11] *Mitchell* relied, in part, on other circuit court cases finding that a deprivation of benefits due under a plan is concrete Article III injury. *See* 953 F.3d at 536 (citing cases). *See also N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 193 (5th Cir. 2015) (finding Article III standing because the participant whose

26

The district court attempted to distinguish *Mitchell* on the ground that, unlike the plaintiff in that case, Plaintiffs here "cannot plausibly allege that United breached the terms of the Plans" because their plans permit cross-plan offsets. App. 75; R. Doc. 60, at 22. But as explained above, whether those plan terms are enforceable depends on the merits of Plaintiffs' key legal claim (i.e., that cross-plan offsets violate ERISA). *Supra*, pp. 19-24. To evaluate standing, the district court should have assumed that Plaintiffs' legal theory was correct and disregarded the unenforceable plan terms. *Id.* Construed without the illegal terms, the Plaintiffs' plans required payment of approved benefits to be made in cash. App. 22; R. Doc. 35, at 22 (¶ 50). When United did not pay the benefits in accordance with the properly-construed plans, Plaintiffs suffered a concrete injury-in-fact—just as this Court held in *Mitchell*. 953 F.3d at 536. *See also, e.g.*, *Transunion*, 141 S. Ct. at 2204 ("If a defendant has caused . . . monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III.").

---

claim was not paid did not receive "the benefit of her bargain" under her plan); *Springer v. Cleveland Clinic Emp. Health Plan Total Care*, 900 F.3d 284, 287 (6th Cir. 2018) (participant's "injury is that he was denied the benefit of his bargain" when plan underpaid his benefit claim); *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1289-91 (9th Cir. 2014) (provider with assignment had Article III standing because the participant "had the legal right to seek payment" pursuant to their plan); *HCA Health Servs. of Ga., Inc. v. Emp'rs Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001) (similar).

27

A host of cases from this Court require this conclusion, moreover, holding that "a plaintiff who has 'produced facts indicating it was a party to a breached contract' has a judicially cognizable interest for standing purposes, regardless of the merits of the breach alleged." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 909 (8th Cir. 2016); *ABF Freight Sys.*, 645 F.3d at 960 (same); *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 716 (8th Cir. 2017) (same); *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 377 (8th Cir. 2018) (same). Allegations of a contractual breach are sufficient to show injury in fact because "the other party's breach devalues the services for which the plaintiff contracted and deprives them of the benefit of their bargain." *Mitchell*, 953 F.3d at 536. Whether the Plaintiffs ultimately succeed in proving the cross-plan offsets were illegal and breached United's fiduciary duties, such that they could not be saved by the plan language, is irrelevant to the standing inquiry. The point is that *if* Plaintiffs are right, they suffered a concrete injury.[12]

---

[12] The district court also suggested that the fact that Plaintiffs brought a claim under ERISA Section 502(a)(2), and not under ERISA Section 502(a)(1)(B), somehow indicates Plaintiffs were not injured by United's self-interested cross-plan offset scheme. App. 67, R. Doc. 60, at 14. But the injury-in-fact element of Article III standing is not "coextensive" with "a plaintiff's potential causes of action" and courts must conflate the two analyses. *Braden*, 588 F.3d at 591. In any case, Plaintiffs' Section 502(a)(2) claim is ideally suited to redress the injuries Plaintiffs suffered when United misappropriated plan assets that had been earmarked for Plaintiffs, because the court can order United to make good to Plaintiffs' plans the losses caused by United's thefts, and to send the stolen payments where they should have gone in the first place. *See, e.g.*, *CIGNA v. Amara*, 563 U.S. 421, 440 (2011) (equitable remedies available under ERISA include "affirmative and negative

1. <u>The Contractual Entitlement to Benefits Belongs to Plaintiffs, Not to Their Providers</u>

The district court, further, disregarded Plaintiffs' contractual entitlement to benefits under their ERISA plans when it held that the benefit payments United withheld were "not losses to either Smith or Ghanim." App. 69; R. Doc. 60, at 16. The district court reasoned that "Plaintiffs received exactly what they signed up to receive" because they received health services for which coverage was approved. App. 68; R. Doc. 60, at 15. But under their health benefit plans, Plaintiffs are not entitled to healthcare *services*—they are entitled to monetary benefits to *pay* for services that are covered by the plans. App. 193, 212; R. Doc. 45-1, at 4, 23. What Plaintiffs signed up to receive was full payment of the benefits due under their plans, ***construed consistently with ERISA*** and ***administered by a loyal fiduciary***. That is not what Plaintiffs received.

The fact that United was supposed to send the benefits directly to Plaintiffs' providers did not alter the fact that it is Plaintiffs, not their providers, who are contractually entitled to the plan benefits. As the Fifth Circuit explained in *North Cypress Medical Center*, one of the cases on which *Mitchell* relied:

---

injunctions," restitution, contract reformation, estoppel, and surcharge); 29 U.S.C. §§ 1132(a)(2) & 1109 ("appropriate relief" under Section 502(a)(2) includes "equitable and remedial relief"). Even if Plaintiffs could obtain similar relief through a claim under Section 502(a)(1)(B), they were not required to do so.

29

> [A] patient suffers a concrete injury if money that she is allegedly owed contractually is not paid, regardless of whether she has directed the money to be paid to a third party for her convenience. The patient in this circumstance is being denied use of funds rightfully hers. The fact that she has directed the funds elsewhere does not change that reality.

*N. Cypress Med. Ctr.*, 781 F.3d at 193; *see also Mitchell*, 953 F.3d at 536. The providers are not parties to the ERISA plans, have no rights of their own under the plans, and could not sue the plans in their own right to obtain the benefits. *See, e.g.*, *Peterson II*, 913 F.3d at 774–75 (citing *Grasso Enters., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1040 (8th Cir. 2016)). Plaintiffs' plans' terms also acknowledge this, expressly providing that the member remains the "sole beneficiary" of the benefit payment, even if United sends the payment directly to the provider. App. 193, 212; R. Doc. 45-1, at 4, 23. United's failure to pay, therefore, is injury to ***Plaintiffs***.

> 2.   Under *Mitchell*, Balance Billing is Not Required for Non-Payment of Benefits to Cause Concrete Injury-in-Fact

The district court also erroneously held that the Plaintiffs did not "experience" a concrete harm from United's non-payment of their benefits because they have not been "balance billed" by their providers for the outstanding portions of their medical bills. App. 67-69, 71-74; R. Doc. 60, at 14-16, 18-21. But *Mitchell*—binding precedent from this Court—holds exactly the opposite:

> [P]lan participants are injured ***not only when an underpaid healthcare provider charges them for the balance of a bill***; they are also injured when a ***plan administrator fails to pay*** a healthcare provider in accordance with the terms of their benefit plan.

953 F.3d at 536 (emphasis added). The other circuit cases on which *Mitchell* relied likewise rejected the notion that a provider's subsequent balance bill is needed to transform a plan administrator's failure to pay benefits due to a patient into Article III injury. *See Springer*, 900 F.3d at 287 ("[T]he denial of plan benefits is a concrete injury for Article III standing even when patients were not directly billed for their medical services."); *N. Cypress Med. Ctr.*, 781 F.3d at 194 (rejecting argument that patient suffers "no Article III injury in the absence of a threat that patients will be billed"); *Spinedex*, 770 F.3d at 1289 (rejecting argument that patients lacked "injury in fact" because their provider had not billed its patients for amounts United refused to pay); *HCA Health Servs.*, 240 F.3d at 991 (same).[13]

Just as in *Mitchell*, *North Cypress*, *Springer*, *Spinedex*, and *HCA Health*, United's failure to pay the benefits due injured Plaintiffs, concretely and immediately. No subsequent balance bill was required to satisfy Article III.[14]

---

[13] *See also Med. Soc'y of N.Y. v. UnitedHealth Grp., Inc.*, 2021 WL 4263717, at *3 (S.D.N.Y. Sept. 20, 2021) (same).

[14] The district court also rejected Plaintiffs' argument that, because Plaintiffs remain legally responsible for the full amount of their providers' billed charges, United's payments-by-offset created a risk that the providers will seek to collect on Plaintiffs' outstanding debts in the future. App. 69; R. Doc. 60 at 16, 20-21. That ruling was also erroneous. The court found that Plaintiffs could not plausibly allege that their providers are likely to balance-bill them in the future, because, even though United has taken hundreds of millions of dollars in cross-plan offsets, "Plaintiffs have not identified a single instance of any provider ever balance-billing a patient." App. 67; R. Doc. 60, at 14; *see also* App. 73; R. Doc. 60, at 20. Under *Mitchell*, 953 F.3d at

Appellate Case: 23-2369     Page: 42     Date Filed: 08/28/2023 Entry ID: 5310869

### B. Plaintiffs Suffered a Concrete Injury Because United's Payments-by-Offset Are Less Valuable Than Cash Payments

The district court further erred by failing to accept as true Plaintiffs' allegations that they suffered a monetary loss because, even assuming *arguendo* the offsets have any value at all, Plaintiffs alleged that a payment-by-offset is less valuable—to **Plaintiffs**—than a cash payment of the same amount. Notably, the district court did not even address these allegations.

As an initial matter, it is hard to see how the Plaintiffs received anything of value from the offsets, given that their providers did not agree to accept them as payment for the services rendered to Plaintiffs. App. 7-8; R. Doc. 35, at 7-8 (¶ 12). But even assuming the offsets have some value, Plaintiffs alleged facts showing that the offsets are not worth as much as a cash payment in the same amount.

As alleged in the Complaint, when United took the offsets against Plaintiffs' benefits, it justified its actions based solely on its own unilateral and self-serving assertion that the providers owed money to another plan. App. 2, 7-8, 16, 37-38, 39-41; R. Doc. 35, at 2, 7-8, 16, 37-38, 39-41 (¶¶ 2, 11, 12, 35, 83-84, 91-92, 95). Plaintiffs' providers dispute the existence and amount of the debts, App. 7-8, 37-38,

---

536, Plaintiffs had no reason to include allegations about balance-billing at all, let alone as to other patients who are not named plaintiffs in this case. The court should not have drawn inferences against Plaintiffs from the absence of those allegations. *In re SuperValu*, 870 F.3d at 768.

32

40, 45; R. Doc. 35, at 7-8, 37-38, 40, 45 (¶¶ 12, 84, 92, 110), and have not agreed to accept the purported forgiveness of the disputed debts in lieu of payment in cash in any event, let alone on a dollar-for-dollar basis. App. 7-8, 16, 24-25, 29-31, 37-38, 40; R. Doc. 35, at 7-8, 16, 24-25, 29-31, 37-38, 40 (¶¶ 12, 35, 56, 66, 68, 69, 84, 92). Prior to taking the offsets, United took no legal action whatsoever to establish the existence or amount of the providers' supposed debts. App. 7-8, 11-12, 15-16, 22, 37-38, 40; R. Doc. 35, at 7-8, 11-12, 15-16, 22, 37-38, 40 (¶¶ 11, 12, 26, 33, 34, 35, 51, 84, 92). To the contrary, United readily admits that, if it does not take offsets, the plans it administers "can recover overpayments made to providers *only when those providers choose to make repayment*. . . ." App. 16; R. Doc. 35, at 16 (¶ 36) (emphasis added). In other words, United is not able to collect, or even interested in trying to collect, its purported overpayments.[15]

The reasonable inference from these well-pleaded factual allegations is that, if not for United's self-help scheme, the overpayments United made to the providers on behalf of the other plans would have been effectively unrecoverable. *See In re SuperValu*, 870 F.3d at 768 (in assessing standing on a motion to dismiss, the court must "accept[] the material allegations in the complaint as true and draw[] all

---

[15] Ignoring all of these allegations, the district court accepted as true United's assertions that the providers owed "debts" in the first place. App. 64, 69; R. Doc. 60, at 11, 16. This was further error.

Appellate Case: 23-2369     Page: 44     Date Filed: 08/28/2023 Entry ID: 5310869

inferences in plaintiffs' favor."). That alone is sufficient to make it ***at least*** plausible that the offsets (i.e., forgiveness of disputed debts United has never even tried to establish, let alone collect) are worth something less than 100% of the face value of the cash payments United tried to replace. As one court recently explained when reviewing a proposed class settlement that included forgiveness of ***established*** debts as part of the class-wide relief, there are multiple reasons why "each dollar of debt forgiveness is not the functional equivalent to the [recipient] as a dollar in cash," including the fact that there was no evidence the defendant had "ever sought to collect on the debt that it will now officially 'forgive.'" *Perks v. TD Bank, N.A.*, 2022 WL 1451753 *2 (S.D.N.Y. May 9, 2022); *see also id.* (explaining that "the value of debt forgiveness to the class may also be lower than the dollar amount forgiven" if "a defendant creditor was unlikely ever to collect on the debt").[16] That is exactly the case here. United never even tried to take legal action against the providers to collect on the providers' purported debts, and it was unlikely ever to do so or to recover the

---

[16] *See also, e.g.*, *Curry v. Money One Fed. Credit Union*, 2021 WL 5839432, at *4 (D. Md. Dec. 9, 2021) ("[T]he amount of debt forgiven may not reflect the value of the recovery to the class because the defendant never would have attempted to collect."); *Clement v. Am. Honda Fin. Corp.*, 176 F.R.D. 15, 28 (D. Conn. 1997) (absent evidence showing how many class members would otherwise repay their debt to the defendant, "the court has no benchmark against which to compare the amount that [the defendant] would collect by offering" credits to offset the debts).

Appellate Case: 23-2369     Page: 45     Date Filed: 08/28/2023 Entry ID: 5310869

full amount, even if it tried. Its unilateral decision to "forgive" the phantom debt, therefore, was of dubious value at best.[17]

This was more than sufficient injury to allow the district court to hear Plaintiffs' claims. *See, e.g.*, *Czyzewski v. Jevic Holding Corp.,* 137 S. Ct. 973, 983 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'"); *Demarais v. Gurstel Chargo, P.A.,* 869 F.3d 685, 693 (8th Cir. 2017) (same). This Court's opinion in *Carlsen v. GameStop*, 833 F.3d 903 (8th Cir. 2016), is directly on point here. In that case, the Court held that the plaintiff had suffered a concrete injury for Article III purposes because the subscription he received, which had compromised privacy protection, was worth less than the subscription he paid for—i.e., a subscription with privacy protections. *Id*. at 961 (citing *Ben Oehrleins & Sons & Daughter, Inc. v. Hennepin Cnty*., 115 F.3d 1272, 1379-80 (8th Cir. 1997)).

---

[17] In the consumer debt context, courts also regularly recognize that the value of an uncollectable debt is significantly less than the face value of the debt. *In re Robinson*, 554 B.R. 800, 805 (Bankr. W.D. La. 2016) (explaining that consumer debts are often "bought and sold at a hefty discount" because "[o]riginal creditors sell uncollectable debts to a 'debt collector' who then attempts to collect the debt."); *Eagle SPE NV I, Inc. v. Kiley Ranch Cmtys.*, 5 F. Supp. 3d 1238, 1245 (D. Nev. 2014) ("[T]he purchaser of debt typically purchases at a discount based upon his estimation of the chances that the debt will be recoverable."); *Seeger v. AFNI, Inc*., 548 F.3d 1107, 1112 (7th Cir. 2008) ("The record does not even reveal whether AFNI paid 100 cents on the dollar for Cingular's delinquent accounts, or if (as is common), it purchased the portfolio of accounts at a discount, thereby compensating itself up front for the expense of its collection efforts and the risk that some accounts might prove to be uncollectible.").

Appellate Case: 23-2369    Page: 46    Date Filed: 08/28/2023 Entry ID: 5310869

Similarly, here, Plaintiffs' plans, construed consistent with ERISA, entitle them to payment of the full value of the allowed benefit amount, but United paid the benefits through offsets, which were less valuable than cash. Like the plaintiff in *GameStop*, the moment Plaintiffs received something less valuable than what the legal terms of their plans entitled them to, they were injured. *GameStop*, 833 F.3d at 961 (such injuries are "concrete, particularized, actual, and in no way hypothetical or conjectural.").

### C. Plaintiffs Allege Injuries that Have Traditionally Been Recognized as a Basis for Lawsuits in American Courts and Satisfy the Requirements Set Forth in *Thole*

The Supreme Court recently reiterated that an injury is "concrete" for Article III purposes when it has "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion*, 141 S. Ct. at 2204 (citing *Spokeo*, 578 U.S. at 340-341). Plaintiffs need not show an "exact duplicate in American history and tradition," but must "identif[y] a close historical or common-law analogue for their asserted injury." *TransUnion,* 141 S. Ct. at 2204. Courts also "must afford due respect to Congress's decision to impose a statutory prohibition or obligation on a defendant, and to grant a plaintiff a cause of action to sue over the defendant's violation of that statutory prohibition or obligation." *Id.* (citing *Spokeo*, 578 U.S. at 340-41). By doing so, Congress "may 'elevate' harms that 'exist' in the real world . . . to actionable legal status." *Id*. at 2205 (citation

36

omitted). Here, both the judgment of Congress and long historical tradition demonstrate that the injuries Plaintiffs suffered when United breached its fiduciary duties in administering Plaintiffs' claims for benefits and managing the assets of Plaintiffs' plans are sufficiently concrete to satisfy Article III.

### 1. Congressional Judgment Reflects an Intent to Protect Employees' Benefits by Enacting Strict Fiduciary Standards

Congress enacted ERISA "'to promote the interests of employees and their beneficiaries in employee benefit plans,' and 'to protect contractually defined benefits.'" *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (citations omitted); *see also Nachman Corp. v. Pension Ben. Guar. Corp.*, 446 U.S. 359, 375 (1980) (Congress enacted ERISA to assure that every employee who becomes eligible for a benefit under an employee benefit plan "actually will receive it."). ERISA reflects "Congress' desire to offer employees ***enhanced*** protection for their benefits." *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996) (emphasis added). The statute does so in several ways, most importantly by subjecting those who manage and administer ERISA plans to strict fiduciary standards. *Id.* at 496.[18]

---

[18] Another way Congress protected the interests of plan participants was by requiring plan fiduciaries to provide participants with accurate information about how their benefit claims were adjudicated and a full and fair opportunity to appeal any adverse decision. *See, e.g.*, 29 U.S.C. § 1133; App. 32-33, 35-41; R. Doc. 35 at 32-33, 35-41 (¶¶ 71-73, 80-82, 88, 90-92, 95). United's EOBs, which falsely represented to Plaintiffs their claims had been paid in full hid from Plaintiffs the fact that their

These standards require fiduciaries, among other things, to act "solely in the interest of plan participants and beneficiaries" and for the "exclusive purpose of providing benefits" to them. 29 U.S.C. § 1104(a)(1)(A). ERISA fiduciaries must act with "care, skill, prudence and diligence." *Id*. § 1104(a)(1)(B). Plan fiduciaries are required to disregard plan terms that violate ERISA. *See* 29 U.S.C § 1104(a)(1)(D).[19] ERISA prohibits a plan fiduciary from "deal[ing] with the assets of the plan in [its] own interest or for [its] own account." 29 U.S.C. § 1106(b)(1). And the statute prohibits plan fiduciaries from "act[ing] in any transaction involving the plan on behalf of a party (or represent[ing] a party) whose interests are adverse to the interest

benefits were subjected to offsets and thus deprived them of their contractually and statutorily guaranteed rights. *See supra* pp. 5-6; App. 26; R. Doc. 35, at 26 (¶ 59); 29 U.S.C. § 1133. The district court rejected these injury allegations by citing the plans' cross-plan offset provisions. App. 77, R. Doc. 60 at 24. This was a non-sequitur, as the court's reasoning does not even address the ***informational*** injury Plaintiffs alleged, which is concrete injury for Article III purposes. *See, e.g.*, *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20-25 (1998) (plaintiff voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III); *Pub. Citizen v. U.S. Dep't of Just.*, 491 U.S. 440, 449 (1989) (denial of information subject to disclosure under the Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue"). The Supreme Court reaffirmed the viability of this type of Article III injury in *Spokeo*, 578 U.S. at 342. *See also Southcentral Found. v. Alaska Native Tribal Health Consortium*, 983 F.3d 411, 419 (9th Cir. 2020) (injury based on "deprivation of information").

[19] *See also*, *e.g.*, *Fifth Third Bancorp*, 573 U.S. at 421 ("[Section 404(a)(1)(D)] makes clear that the duty of prudence trumps the instructions of a plan document."); *Cent. States*, 472 U.S. at 568 ("[T]rust documents cannot excuse trustees from their duties under ERISA").

of the plan or the interests of its participants and beneficiaries." 29 U.S.C. § 1106(b)(1).

Congress, moreover, intended for these ERISA-imposed fiduciary duties to run to individual participants and beneficiaries. ERISA's stated purpose is "to protect the interests of participants and beneficiaries by establishing standards of conduct, responsibility, and obligation for fiduciaries and providing appropriate remedies and ready access to the Federal courts." *Varity*, 516 U.S. at 513 (cleaned up); *see also* 29 U.S.C. § 1001(a). As the Supreme Court pointed out in *Varity*, "[g]iven these objectives, it is hard to imagine why Congress would want to immunize breaches of fiduciary duty that harm individuals . . . ." *Id*. ERISA's fiduciary standards, moreover, protect participants' interests in loyal administration of benefit claims as well as management of plan assets. *See Firestone*, 489 U.S. at 111-13 (holding that a benefit determination under ERISA is a fiduciary act); *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008) (ERISA "sets forth a special standard of care upon a plan administrator, namely, that the administrator 'discharge [its] duties' ***in respect to discretionary claims processing*** 'solely in the interest of the participants and beneficiaries' of the plan." (emphasis added)).

In addition to enacting multiple provisions imposing stringent fiduciary standards of conduct, Congress gave plan participants multiple causes of action to enforce these duties. Most relevant here, ERISA Sections 502(a)(2) and 409,

Appellate Case: 23-2369   Page: 50   Date Filed: 08/28/2023 Entry ID: 5310869

codified at 29 U.S.C. §§ 1132(a)(2) and 1109, give plan participants the right to sue a fiduciary who breaches any of its duties under ERISA for "appropriate relief," which can include restoring losses to the plan, disgorging profits earned through misuse of plan assets, and "other equitable or remedial relief," up to and including "removal of such fiduciary." 29 U.S.C. §§ 1132(a)(2), 1109.[20]

In short, in enacting ERISA, Congress was trying to protect American workers from unscrupulous plan administrators who threatened employees' ability to rely on the benefits their employers promised. It did so by imposing strict fiduciary standards—"which have been described as the highest known to the law," *Braden*, 588 F.3d at 598 (cleaned up)—and opening the courthouse doors to employees whose fiduciaries fell short of those standards. Congress's judgment on the matter is plain, and should be afforded "due respect." *Transunion*, 141 S. Ct. at 2204.

---

[20] For example, here, equitable relief pursuant to Sections 502(a)(2) and 409 can provide a remedy for injuries to both the Plaintiffs and their plans from United's fiduciary breaches. *See* App. 51; R. Doc. 35, at 51 (prayer for relief seeking, among other things, order requiring United to return the misappropriated plan assets to the plans and to provide an accounting of the outstanding amounts of benefits due to be paid by the plans); *see also* App. 8-9; R. Doc. 35, at 8-9 (¶ 13) (similar). Because the Plaintiffs have Article III standing to pursue their personal legal interests, they also have the right to pursue their Plans' interests under ERISA §§ 502(a)(2) and 409. *Braden*, 588 F.3d at 592 (holding that a plaintiff may "assert causes of action which are based on conduct that harmed him, but which sweep more broadly than the injury he personally suffered"). Thus, through their 502(a)(2) claim, Plaintiffs will be able to recover the plan assets—earmarked for Plaintiffs' benefits—that were stolen by United through its cross-plan offsets, so that they can then obtain the proper benefit payments from their plans.

## 2. Historical Tradition Also Supports a Finding that the Injuries Plaintiffs Allege are Concrete

History, too, shows that Plaintiffs' injuries from United's disloyal actions with respect to the entire process of administering and paying Plaintiffs' benefits are concrete. ERISA's fiduciary duties "draw much of their content from the common law of trusts, the law that governed most employee benefit plans before ERISA's enactment." *Varity*, 516 U.S. at 496. ERISA's fiduciary responsibility provisions codified and made applicable to ERISA fiduciaries certain principles developed throughout the evolution of the law of trusts, and Congress intended for the courts to develop on that foundation a "federal common law of rights and obligations under ERISA-regulated plans." *Firestone*, 489 U.S. at 110.

Breach of fiduciary duty claims have deep historic roots in the common law; for centuries, courts have adjudicated alleged fiduciary breaches with "no further inquiry" into whether the breach caused any monetary loss. *See* Restatement (Third) of Trusts § 78(1) & cmt. b.[21] And even the equitable relief Congress made available

---

[21] Under the "no further inquiry" rule, "a beneficiary is given a judgment against a wrongdoing trustee though the beneficiary has not suffered any damage and the trustee has not made any profit from the transaction." Bogert's Law of Trusts & Trustees § 862 (Update June 2020); *see also* 3 Austin Wakeman Scott et al., *Scott and Ascher on Trusts* § 17.2, at 1080 & n.13 (5th ed. 2007); *Keech v. Sandford*, (1726) 37, 25 Eng. Rep. 223 (Ch.); *Whelpdale v. Cookson*, (1747) 27 Eng. Rep. 856 (Ch.); *Aberdeen Ry. Co. v. Blaikie Bros.*, (1854) 2 L.R. Eq. 1281 (H.L.) 1286-1287 (summarizing cases); *Michoud v. Girod*, 45 U.S. (4 How.) 503, 556 (1846) (that rule has "been applied by the English courts of chancery from an early day" and adopted

to remedy fiduciary breaches under ERISA has a lengthy pedigree, dating back to well before "the merger of law and equity." *Amara*, 563 U.S. at 440; *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256-57 (1993) (ERISA's "equitable relief" refers to remedies that were typically available in courts of equity). This long history confirms that United's self-dealing and other fiduciary breaches, which were aimed at and directly impacted Plaintiffs' benefit payments, subjected Plaintiffs to justiciable injuries. *See, e.g.*, *Wit v. United Behav. Health*, --- F. 4th ----, 2023 WL 5356640, at \*8 (9th Cir. Aug. 22, 2023) (holding plaintiffs alleged concrete injuries from breaches of fiduciary duty even though they had not alleged entitlement to benefits, because the breaches threatened the fair adjudication of the plaintiffs' benefit claims).

### 3.     *Thole* Supports Standing in this Case

This conclusion, moreover, is supported by the Supreme Court's decision in *Thole v. U.S. Bank, N.A.*, 140 S. Ct. 1615 (2020). The plaintiffs in *Thole* asserted generalized grievances about their plan fiduciaries' mismanagement of the plans, but that mismanagement never impacted them personally and never would. 140 S. Ct. at

---

by American courts) (citing *Davoue v. Fanning*, 2 Johns. Ch. 252 (N.Y. Ch. 1816)); *Jackson v. Smith*, 254 U.S. 586, 588-89 (1921); *Magruder v. Drury*, 235 U.S. 106, 118-120 (1914); *United States v. Carter*, 217 U.S. 286, 307 (1910).

Appellate Case: 23-2369     Page: 53     Date Filed: 08/28/2023 Entry ID: 5310869

1618-19.[22] Nothing about the *Thole* plaintiffs' own benefit payments would change regardless of the outcome of the case, *id.* at 1619, and the fiduciary acts at issue in the case were not directed toward the plaintiffs individually. *Id.* (fiduciaries accused of "poorly investing the assets of the plan").[23] By sharp contrast, Plaintiffs here are not raising generalized grievances about cross-plan offsetting; they were personally subjected to cross-plan offsets that reduced United's payments of the benefits to which Plaintiffs, personally, were otherwise entitled.[24] For that reason, the fiduciary breaches Plaintiffs have alleged specifically impacted how United handled Plaintiffs' personal benefit claims. In *Thole*, the Supreme Court stressed that if the

---

[22] In a defined benefit pension plan, participants receive a fixed payment from the plan that does not fluctuate with the value of plan assets. *Thole*, 140 S. Ct. at 1618. The *Thole* plaintiffs were not claiming that their benefits had been wrongly denied, that they had not received their monthly benefits, or that their future benefits would be impacted in any way by the alleged fiduciary breaches. *Id*. at 1619.

[23] The Supreme Court held that the participants did not have an equitable interest in the plan's assets as such, and thus had not been harmed in a personal and individual way by the diminution in the value of the plan's assets resulting from the fiduciary breaches. 140 S. Ct. at 1620.

[24] *Scott v. UnitedHealth Grp., Inc*., 540 F. Supp. 3d 857 (D. Minn. 2021), also cited by the district court, App. 65-66, 69-70; R. Doc. 60, at 12-13, 16-17, supports Article III standing in this case for the same reason. While the *Scott* plaintiffs challenged United's cross-plan offsetting practices, they themselves had not actually been subjected to cross-plan offsets, so United's scheme did not impact them personally, leading to the court's finding that they did not suffer Article III injury. 540 F. Supp. 3d at 865. Plaintiffs in this action, however, have been subjected to cross-plan offsets and have therefore been individually injured by United's fiduciary breaches, such that Article III standing has easily been satisfied.

Appellate Case: 23-2369     Page: 54     Date Filed: 08/28/2023 Entry ID: 5310869

alleged fiduciary breach had impacted the plaintiffs' vested benefits, "they would of course have Article III standing to sue." 140 S. Ct. at 1619.[25] That is precisely the situation here.

## CONCLUSION

The district court's judgment and order should be reversed.

Dated: August 25, 2023        Respectfully submitted by:


/s/ *Kristen G. Marttila*
Kristen G. Marttila
Derek C. Waller
LOCKRIDGE GRINDAL NAUEN, P.L.L.P
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401
Tel. (612) 339-6900
kgmarttila@locklaw.com
dcwaller@locklaw.com

Karen L. Handorf, Esq.
Julie S. Selesnick
BERGER MONTAGUE PC
2001 Pennsylvania Ave., NW, Suite 300
Washington, D.C. 20006
Tel. (202) 559-9740
khandorf@bm.net
jselesnick@bm.net

---

[25] At the same time, of course, *Thole* did not state a new a rule requiring ERISA plaintiffs (or anyone else) to establish a ***financial*** injury to have Article III standing. *Med. Soc'y of N.Y.*, 2021 WL 4263717, at *2 ("To the extent that Defendants argue that Plaintiffs must show monetary harm to establish standing, this is incorrect, and *Thole* does not hold otherwise."). The Supreme Court merely recognized that a loss of ERISA plan benefits ***is*** sufficient to satisfy Article III.

Appellate Case: 23-2369     Page: 55     Date Filed: 08/28/2023 Entry ID: 5310869

E. Michelle Drake
BERGER MONTAGUE PC
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Tel. (612) 594-5999
emdrake@bm.net

D. Brian Hufford, Esq.
Jason S. Cowart, Esq.
ZUCKERMAN SPAEDER LLP
485 Madison Avenue, 10th floor
New York, NY 10022
Tel. (212) 704-9660
dbhufford@zuckerman.com
jcowart@zuckerman.com


Caroline E. Reynolds, Esq.
ZUCKERMAN SPAEDER LLP
1800 M St. NW, Suite 1000
Washington, DC 20036
Tel. (202) 778-1800

*Counsel for Plaintiffs*

Appellate Case: 23-2369    Page: 56    Date Filed: 08/28/2023 Entry ID: 5310869

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 12,091 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

3.      This document complies with 8th Cir R 28A(h) because the document has been scanned for viruses and it is virus-free.

/s/ *Kristen G. Marttila*
Kristen G. Marttila
Attorney for Plaintiffs-Appellants

Dated: August 25, 2023

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 25, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Kristen G. Marttila*
Kristen G. Marttila
Attorney for Plaintiffs-Appellants