No. 23-2369

# In the
# United States Court of Appeals For the Eighth Circuit

---

Rebecca Smith and Cristine M. Ghanim,
individually and on behalf of all others similarly situated,

*Plaintiffs-Appellants*,

v.

UnitedHealth Group Inc., United Healthcare Services, Inc.,
UnitedHealthcare Insurance Company, United Medical Resources,
United Healthcare Service LLC, and Doe Defendants 1-10,

*Defendants-Appellees*.

---

On Appeal from the U.S. District Court for the District of Minnesota
Case No. 22-CV-1658 (NEB/DJF)

## REPLY BRIEF OF PLAINTIFFS-APPELLANTS

Karen L. Handorf, Esq.
Julie S. Selesnick, Esq.
BERGER MONTAGUE PC
2001 Pennsylvania Ave., NW, Suite 300
Washington, D.C. 20006
Tel. (202) 559-9740
khandorf@bm.net
jselesnick@bm.net

E. Michelle Drake, Esq.
BERGER MONTAGUE PC
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Tel. (612) 594-5999
emdrake@bm.net

D. Brian Hufford, Esq.
Jason S. Cowart, Esq.
ZUCKERMAN SPAEDER LLP
485 Madison Avenue, 10th floor
New York, NY 10022
Tel. (212) 704-9660
dbhufford@zuckerman.com
jcowart@zuckerman.com

Caroline E. Reynolds, Esq.
ZUCKERMAN SPAEDER LLP
1800 M St. NW, Suite 1000
Washington, DC 20036
Tel. (202) 778-1800
creynolds@zuckerman.com

*Additional counsel listed on next page*

Kristen G. Marttila, Esq.
Derek C. Waller, Esq.
LOCKRIDGE GRINDAL NAUEN, P.L.L.P
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tel. (612) 339-6900
kgmarttila@locklaw.com
dcwaller@locklaw.com

# **TABLE OF CONTENTS**

**Page**

Table of Authorities ......................................................................... ii

I. The District Court's Failure to Apply the Correct Standard of Review Was Dispositive and Requires Reversal ........................................ 3

    A. The Court's Standing Analysis Must Start from the Assumption that Cross-Plan Offsets Violate ERISA ................................. 3

    B. Because Cross-Plan Offsets Violate ERISA, Plan Terms Purporting to Authorize Them Are Void *Ab Initio* .............................. 6

II. Plaintiffs Were Injured by United's Cross-Plan Offsets Because United Failed to Pay Plaintiffs' Benefits as Required by the Enforceable Terms of Plaintiffs' Plans ........................................... 11

    A. United Concedes that an Alleged Breach of Contract Causes Article III Injury-in-Fact .................................................. 11

    B. Standing Does Not Require Plaintiffs to Allege "Out-of-Pocket Loss" or "Imminent Risk of Future Harm" ......................... 13

III. Plaintiffs—Not Only Their Doctors—Were Injured by United's Payments-by-Offset Because the Offsets Were Less Valuable Than Cash ........................................................................................ 16

IV. United's Breaches of Fiduciary Duty Caused Plaintiffs to Suffer Cognizable Injury-in-Fact ............................................................ 20

V. Conclusion ............................................................................... 24

Certificate of Compliance

Certificate of Service

i

Appellate Case: 23-2369    Page: 3    Date Filed: 11/13/2023 Entry ID: 5335197

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Farm Bureau Fed'n v. EPA*,
   836 F.3d 963 (8th Cir. 2016)................................................................. 3

*Auctus Fund, LLC v. Drone Guarder, Inc.*,
   2023 WL 2401014 (D. Mass. Mar. 8, 2023)...................................... 9

*Braden v. Wal-Mart Stores, Inc.*,
   588 F.3d 585 (8th Cir. 2009)........................................................... 4, 6

*Carlsen v. GameStop, Inc.*,
   833 F.3d 903 (8th Cir. 2016)........................................................ 12, 13

*Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*,
   472 U.S. 559 (1985) .......................................................................... 7

*CIGNA Corp. v. Amara*,
   563 U.S. 421 (2011) ........................................................................ 11

*Clemens v. ExecuPharm Inc.*,
   48 F.4th 146 (3d Cir. 2022)............................................................. 22

*Comm. of Wal-Mart Stores, Inc., Assocs.' Health & Welfare Plan v. Gamboa*,
   479 F.3d 538 (8th Cir. 2007)............................................................. 7

*CRST Expedited, Inc. v. TransAm Trucking, Inc.*,
   960 F.3d 499 (8th Cir. 2020)............................................................. 8

*Doe v. United Behavioral Health*,
   523 F.Supp.3d 1119 (N.D. Cal. 2021) ............................................. 10

*Falberg v. Goldman Sachs Grp., Inc.*,
   2022 WL 538146 (S.D.N.Y. Feb. 14, 2022)...................................... 22

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014) .......................................................................... 7

*Finley v. Special Agents Mut. Benefit Ass'n, Inc.*,
   957 F.2d 617 (8th Cir. 1992)............................................................. 8

*Goldman Sachs 401(k) Plan Ret. Comm. v. Falberg*,
   2022 WL 4126112 (2d Cir. June 29, 2022) ...................................... 22

*Griffin v. Coca-Cola Refreshments USA, Inc.*,
   989 F.3d 923 (11th Cir. 2021)....................................................... 8, 10

Appellate Case: 23-2369   Page: 4   Date Filed: 11/13/2023 Entry ID: 5335197

*Kramer v. Smith Barney*,
  80 F.3d 1080 (5th Cir. 1996) ................................................................ 9

*Mitchell v. Blue Cross Blue Shield of N.D.*,
  953 F.3d 529 (8th Cir. 2020) .............................. 2, 12, 13, 14, 15, 16, 17

*Perelman v. Perelman*,
  919 F.Supp.2d 512 (E.D. Pa. 2013) ...................................................... 9

*Perelman v. Perelman*,
  793 F.3d 368 (3d Cir. 2015) ................................................................. 9

*Perks v. TD Bank, N.A.*,
  2022 WL 1451753 (S.D.N.Y. May 9, 2022) ....................................... 16

*Peterson on behalf of E v. UnitedHealth Grp. Inc.*,
  913 F.3d 769 (8th Cir. 2019) ("*Peterson II*") ................................. 8, 17

*Peterson on behalf of Patients E, I, K, L, N, P, Q, and R v.UnitedHealth Grp. Inc.*,
  242 F.Supp.3d 834 (D. Minn. 2017) ("*Peterson I*") ............................ 4, 5, 6, 7, 8

*Ryan S. v. UnitedHealth Grp., Inc.*,
  2022 WL 883743 (9th Cir. Mar. 24, 2022) ................................... 14, 15

*Sherman v. Winco Fireworks, Inc.*,
  532 F.3d 709 (8th Cir. 2008) ........................................................... 15

*Solis v. Plan Benefit Servs., Inc.*,
  620 F.Supp.2d 131 (D. Mass. 2009) ..................................................... 9

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ...................................................................... 20, 22

*Thole v. U. S. Bank N.A.*,
  140 S.Ct. 1615 (2020) ................................................................... 14, 23

*TransUnion LLC v. Ramirez*,
  141 S.Ct. 2190 (2021) ............................................ 20, 21, 22, 23, 24

*United States v. White Plume*,
  447 F.3d 1067 (8th Cir. 2006) ............................................................. 6

*Wit v. United Behavioral Health*,
  79 F.4th 1068 (9th Cir. 2023) ........................................................... 21

**Statutes**

29 U.S.C. § 1104, ERISA § 404 ...................................................... 4, 7, 8

29 U.S.C. § 1106, ERISA § 406 ...................................................... 3, 6, 8

Appellate Case: 23-2369     Page: 5     Date Filed: 11/13/2023 Entry ID: 5335197

29 U.S.C. § 1109, ERISA § 409 ............................................................ 10

29 U.S.C. § 1132, ERISA § 502 ............................................................ 11

29 U.S.C. § 1133, ERISA § 503 ............................................................ 24

**Other Authorities**

1 Williston on Contracts § 1:20 (4th ed.)......................................... 9, 10

Appellate Case: 23-2369    Page: 6    Date Filed: 11/13/2023 Entry ID: 5335197

Plaintiffs' employer-sponsored health plans owed **_Plaintiffs_** a sum certain in benefits, which the plan documents required United to pay in "cash or cash equivalents." Br. of Pls.-Appellants ("Br.") 3–4, 12. United concedes that it did not pay the benefits in cash, but instead sent letters asserting that it would use the Plaintiffs' benefits to repay money it claimed the Plaintiffs' doctors purportedly owed to another plan (that is, United would subject Plaintiffs' benefits to cross-plan offsets). *Id.* 5–6. United argues that Plaintiffs were not personally injured by this scheme because it complies with the terms of the plans *as written*, but that argument fails for two distinct reasons: (1) cross-plan offsets are illegal prohibited transactions under ERISA, which means the plan terms purporting to authorize them are void *ab initio* and must be ignored; and (2) even if those plan terms were enforced, the offsets were still less valuable than—and therefore, not "equivalent" to—the full amount of benefits Plaintiffs were owed.

Despite United's protestations, Plaintiffs' position is the one based on well-settled legal principles—namely, that a plan administrator cannot contract around ERISA's strict requirements and fiduciary duties, and that a plan participant has standing to sue for an administrator's failure to pay benefits, even if her provider has not balance-billed her (yet). In contrast, United's argument—that ERISA plan participants lack standing to challenge United's wholly self-interested cross-plan offsetting scheme, even when it directly implicates their own benefit payments—

1

rests on unheard-of new legal theories of standing and civil procedure. In United's view, there is no legitimate expectation that ERISA plan terms will honor the law. (There is.) Per United, Article III standing requires out-of-pocket loss (it does not), and a plaintiff's standing can evaporate because of the inaction of a third party like Plaintiffs' doctors. (It cannot.) According to United, at the motion to dismiss stage, not only may a court draw inferences in the defendant's favor (it may not), it may even reject a plaintiff's standing based on those inferences. (It must not.) Each of United's arguments conflicts with well-settled law and should be rejected.

United concedes that "a plaintiff who has not received the benefits promised in her health plan suffers traditional benefit of the bargain injuries" sufficient to support Article III standing. Br. of Defs.-Appellees ("Opp'n") 19 (cleaned up) (citing *Mitchell v. Blue Cross Blue Shield of N.D.*, 953 F.3d 529, 536 (8th Cir. 2020)). That concession, alone, resolves this appeal because that is exactly what Plaintiffs have alleged. In rejecting Plaintiffs' standing, the district court erroneously failed to credit Plaintiffs' central argument that cross-plan offsets violate ERISA, and it failed to consider ERISA's express prohibitions on cross-plan offsets when construing Plaintiffs' plan terms. When the plans are properly construed without the void terms, it is obvious that Plaintiffs suffered the very injury that United admits satisfies Article III. The district court's ruling must be reversed.

Appellate Case: 23-2369     Page: 8     Date Filed: 11/13/2023 Entry ID: 5335197

## I. The District Court's Failure to Apply the Correct Standard of Review Was Dispositive and Requires Reversal.

United does not (and could not) dispute that Plaintiffs correctly stated the controlling standard of review: When reviewing *de novo* the district court's ruling on United's Rule 12(b)(1) motion to dismiss for lack of standing, this Court must assume that Plaintiffs will succeed in establishing that cross-plan offsets violate ERISA and decide, in light of that assumption, whether Plaintiffs have alleged a cognizable injury-in-fact. Br. 17–22 (citing cases).[1] Yet United repeats the same error as the district court, by first implicitly rejecting Plaintiffs' core legal theory and then assessing standing.

### A. The Court's Standing Analysis Must Start from the Assumption that Cross-Plan Offsets Violate ERISA.

Correctly applying the standard of review in this case means starting by accepting as true Plaintiffs' allegations that the transactions United uses to effectuate cross-plan offsets violate ERISA's express prohibited transaction provisions and run afoul of the strict fiduciary duties the statute imposes on United. *See* Br. 12–13, 19–21 (explaining how Plaintiffs' allegations demonstrate that cross-plan offsets violate ERISA §§ 406(a)(1)(D), (b)(1) & (b)(2), and also breach United's fiduciary duty of

---

[1] *See, e.g., Am. Farm Bureau Fed'n v. EPA*, 836 F.3d 963, 968 (8th Cir. 2016) (when evaluating standing on a Rule 12(b)(1) motion to dismiss, a court "**must 'assume** that on the merits the **plaintiffs would be successful** in their claims'") (emphasis added).

3

loyalty under ERISA § 404(a)). In doing so, the Court must reject United's fanciful alternative narrative, in which cross-plan offsets are good for plans and plan participants alike, offsets are accepted without objection by participants and their providers, and providers happily forego payment for their services whenever United asserts it overpaid the provider for services to some other patient. Opp'n 2–7; *id.* 29. It is well settled that, on a Rule 12 motion, "inferences are to be drawn in favor of the [plaintiff]," not the defendant. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009) (finding district court erred by "ignor[ing] reasonable inferences supported by the facts alleged" and "[drawing] inferences in [defendants'] favor, faulting [the plaintiff] for failing to plead facts tending to contradict those inferences"). United's preferred inferences are wholly unsupported and unreasonable in any event.

United's fairy tale, moreover, blatantly mischaracterizes Judge Schiltz's opinion in *Peterson I*, leaving out the opinion's detailed discussion of how abusive cross-plan offsetting is, and suggesting (falsely) that Judge Schiltz's only concern was whether the practice was adequately disclosed to plan sponsors. Opp'n 4–5 (discussing *Peterson on behalf of Patients E, I, K, L, N, P, Q, and R v. UnitedHealth Grp. Inc.*, 242 F.Supp.3d 834 (D. Minn. 2017) ("*Peterson I*")). As Judge Schiltz explained, the problem with cross-plan offsetting is that it enables United unilaterally and extrajudicially to assert and collect ***disputed*** debts ostensibly owed

4

to one plan (Plan A) by a Plan A participant or her provider, by misusing assets a different plan (Plan B) owes as benefits to a Plan B participant—thereby evading not only ERISA, but also all the legal steps United would normally have to take to establish the debt and its right to collect.

As Judge Schiltz recognized, providers often dispute, on behalf of themselves and their patients (i.e., the Plan A participants), whether United made an overpayment from Plan A at all. 242 F.Supp.3d at 837. Normally, United would have to initiate administrative or legal proceedings to recover a disputed overpayment, but since the expected cost of recovery outweighs the possible return, United is "unlikely" to do so. *Id*. Cross-plan offsetting enables United to sidestep the time and expense of having to prove and recover debts it claims are owed, and instead to force that burden onto providers and their patients, merely because it already has control of both plans' assets. *Id*. As Judge Schiltz frankly observed, "cross-plan offsetting allows United to act as ***judge, jury, and executioner***" and treat a provider as being in debt—"***no matter how strongly the provider denies being in debt***." *Id.* at 838 (emphasis added).

Completely ignoring Judge Schiltz's detailed discussion, United wrongly claims—and the district court improperly inferred—that the purported overpayments it collects through offsets are ***established*** debts, and that any reluctance to fight back is evidence that the amounts are undisputed. *See, e.g.*, Opp'n

Appellate Case: 23-2369    Page: 11    Date Filed: 11/13/2023 Entry ID: 5335197

10, 29; *see also* R. Doc. 60 at 14; *Braden*, 588 F.3d at 595. But as Judge Schiltz pointed out, a provider's decision (at least for now) not to seek recovery from United or from Plaintiffs is not proof that United paid the benefits due to Plaintiffs under their plans. Rather, it merely indicates that the providers realize—just like United did—that the cost of pursuing payment outweighs the likely return. 242 F.Supp.3d at 837–38. But unlike United, the providers cannot engage in self-help because they do not control the disputed funds.

Even if this Court were inclined to agree with United's rosy opinion of its own self-help scheme, the fact is that Congress did not. The legislature chose to expressly prohibit the transactions that effectuate cross-plan offsets, in multiple provisions, including, but not limited to, ERISA sections 406(a)(1)(D), (b)(1) and (b)(2). As this Court has admonished:

> [I]t is the duty of the legislative branch to make the law. We must refuse to infringe on the legislative prerogative of enacting statutes to implement public policy. The problems of public policy are for the legislature.

*United States v. White Plume*, 447 F.3d 1067, 1072 (8th Cir. 2006). Here, the legislature has spoken: cross-plan offsets, by their very nature, violate ERISA.

## B. Because Cross-Plan Offsets Violate ERISA, Plan Terms Purporting to Authorize Them Are Void *Ab Initio*.

The next step in the standing analysis is where the district court's legal error— which United repeats throughout its Opposition—manifests most glaringly. The

6

district court held that Plaintiffs "cannot plausibly allege that United breached the terms of the Plans" when United subjected their benefits to offsets because their plans contained terms purporting to authorize cross-plan offsetting (hereafter, the "CPO Terms"). App. 75; R. Doc. 60 at 22. In doing so, the district court failed to acknowledge Plaintiffs' allegation that the CPO Terms violate ERISA.

Unlike private contracts, an ERISA plan "must be read in light of trust law and the fiduciary duties imposed by ERISA." *Peterson I*, 242 F.Supp.3d at 843 (citing *Admin. Comm. of Wal-Mart Stores, Inc., Assocs.' Health & Welfare Plan v. Gamboa*, 479 F.3d 538, 542 (8th Cir. 2007)). For that reason, ERISA prohibits fiduciaries (like United) from following plan terms that violate the statute. 29 U.S.C. § 1104(a)(1)(D). As the Supreme Court explained in *Dudenhoeffer*, because ERISA provides that fiduciaries must follow plan documents only "insofar as such documents . . . are consistent" with the statute, it is "clear" that ERISA fiduciary duties "trump[] the instructions of a plan document." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 421 (2014) (citing 29 U.S.C. § 1104(a)(1)(D)). *See also*, *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 568 (1985) ("trust documents cannot excuse trustees from their duties under ERISA"). For exactly that reason, when determining whether a plan participant is entitled to benefits (i.e., "the benefit of the bargain") from a plan, this Court examines, among other things, whether the fiduciary's interpretation of plan terms

7

would result in a violation of ERISA's substantive or procedural requirements. *Finley v. Special Agents Mut. Benefit Ass'n, Inc*., 957 F.2d 617, 621 (8th Cir. 1992). As Plaintiffs have explained, United's CPO Terms cannot pass this test. Br. 20–21.[2]

When the Court assumes the merit of Plaintiffs' claims that cross-plan offsets violate ERISA, it ***necessarily*** follows—as a matter of law—that the CPO Terms are void *ab initio*. This is because the CPO Terms purport to override ERISA by authorizing transactions the statute expressly prohibits. Br. 22–24. As this Court has explained, "[i]llegal agreements and those in violation of public policy are commonly held to be **entirely void** and so **not contracts at all**." *CRST Expedited, Inc. v. TransAm Trucking, Inc.*, 960 F.3d 499, 507 (8th Cir. 2020) (emphasis added); *see also, e.g.*, *Griffin v. Coca-Cola Refreshments USA, Inc.*, 989 F.3d 923, 934 n.6 (11th Cir. 2021) ("[a] contract is void *ab initio* if it seriously offends law or public

---

[2] In *Peterson*, both Judge Schiltz and this Court acknowledged that the legality (or illegality) of cross-plan offsetting was a factor to consider in determining whether United's interpretation of plan terms as authorizing its cross-plan offsets was reasonable—and both raised considerable doubt (without deciding) whether the practice could ever comply with ERISA. *See Peterson I*, 242 F.Supp.3d at 844 ("In stark terms, cross-plan offsetting involves using assets from one plan to satisfy debt allegedly owed to a separate plan—a practice that raises obvious concerns under §§ 1104 and 1106. These concerns are particularly acute in this case, in which every offset that United orchestrated did not just benefit a different, unrelated plan, but benefited United itself."); *Peterson on behalf of E v. UnitedHealth Grp. Inc.*, 913 F.3d 769, 776–77 (8th Cir. 2019) ("*Peterson II*") (analyzing ways in which cross-plan offsetting is "in tension" with ERISA requirements and fiduciary duties, and concluding that, "[r]egardless of whether cross-plan offsetting necessarily violates ERISA, it is questionable at the very least") (citing 29 U.S.C. § 1104(a)(1)).

8

policy"); 1 Williston on Contracts § 1:20 (4th ed.) ("Bargains that are contrary to express statutes or to the policy of express statutes are illegal bargains . . . and void *ab initio*.").

What the district court overlooked—and United refuses to acknowledge—is that if the CPO Terms are void *ab initio* because they are illegal (as the Court must assume at this stage), that means the Court must **disregard them** entirely and read the plans as though those terms are not even present.[3] Courts regularly do just that when they refuse to enforce plan terms that violate the statute or otherwise would thwart ERISA's purposes. *See, e.g.*, *Solis v. Plan Benefit Servs., Inc.*, 620 F.Supp.2d 131, 145 (D. Mass. 2009) (finding plan provision purporting to relieve ERISA fiduciary of responsibility for collecting employer contributions void as against public policy); *Kramer v. Smith Barney*, 80 F.3d 1080, 1085 (5th Cir. 1996) (voiding plan term incorporating American Stock Exchange time limit for arbitration because applying the term "would impair [the plaintiff's] substantive rights" under ERISA); *Perelman v. Perelman*, 919 F.Supp.2d 512, 524 (E.D. Pa. 2013), *aff'd*, 793 F.3d 368 (3d Cir. 2015), (indemnification provision in ERISA plan was "void as against

---

[3] As United points out, in some circumstances, it may be more equitable to revise the illegal term than to void it. *See* Opp'n 22 n.8; *see also Auctus Fund, LLC v. Drone Guarder, Inc.*, 2023 WL 2401014, at *8 (D. Mass. Mar. 8, 2023) (reforming a usurious interest rate rather than voiding the entire loan). But United does not (and could not) argue for such a result here.

9

public policy"); *Doe v. United Behavioral Health*, 523 F.Supp.3d 1119, 1127 (N.D. Cal. 2021) (invalidating plan exclusion that violated ERISA, noting that "multiple circuit courts agree that, in general, plan terms cannot override fiduciary duties").

"When a bargain is void, it is as if it never existed." 1 Williston on Contracts § 1:20. That is what "void *ab initio*" means: "[n]ull from the beginning, as from the first moment when a contract is entered into." *Griffin*, 989 F.3d at 934 n.6. This is why United is wrong when it argues that Plaintiffs seek to enforce a "hypothetical contract." Opp'n 18. The void CPO Terms are a nullity, and Plaintiffs are merely trying to enforce the remaining, lawful, terms of their plans as written.[4] It is also why there is no need for the Court to "reform" Plaintiffs' plans to excise the illegal terms, contrary to United's contention. Opp'n 22–23 & n.8, 25–26.[5] Instead, the illegal

---

[4] United protests that, if Plaintiffs are right, "a participant could always claim that any provision of his plan violates ERISA" and seek to enforce his plan "shorn of the offending provision." Opp'n 24–25. But if United's concern is that future plaintiffs will make frivolous assertions of illegality, a court would likely grant a properly filed Rule 12(b)(6) motion for failure to state a plausible claim, rather than holding that such plaintiffs lacked standing.

[5] Even though United concedes that Plaintiffs have never mentioned "reformation," Opp'n 22 n.8, it accuses Plaintiffs of trying to establish standing "based on claims not alleged." Opp'n 25–26. That argument has no basis in reality. Plaintiffs claim that United's abusive and self-serving cross-plan offsetting scheme breached its fiduciary duties, and that United underpaid Plaintiffs' benefits pursuant to that disloyal scheme. *See, e.g.*, Br. 12–13. Plaintiffs' standing arises directly from the claims Plaintiffs asserted.

In any case, reformation is a *remedy* available under ERISA for breaches of fiduciary duty; it is not a separate claim for relief. *See, e.g.*, 29 U.S.C. § 1109(a) (relief

10

CPO Terms simply have no legal effect—and they never did. Any other rule would mean ERISA fiduciaries could easily circumvent ERISA by overriding statutory requirements with contrary plan language, rendering the entire statutory regime irrelevant. This Court should not be the first to adopt such a perverse rule.

## II.    Plaintiffs Were Injured by United's Cross-Plan Offsets Because United Failed to Pay Plaintiffs' Benefits as Required by the Enforceable Terms of Plaintiffs' Plans.

Once the district court's most fundamental error—its enforcement of the void and unenforceable CPO Terms—is corrected, the rest of the standing analysis is straightforward and, effectively, undisputed.

### A. United Concedes that an Alleged Breach of Contract Causes Article III Injury-in-Fact.

United admits, as it must, that "[a]n allegation of contractual breach alone suffices for standing." Opp'n 20 (explaining that contractual breaches cause injury-in-fact even if the breach does not cause monetary harm). *See also id.* 15–16 (conceding that "[a]n alleged deprivation of the benefits of a contractual bargain certainly constitutes 'injury' for standing purposes"). United nevertheless insists Plaintiffs lack standing because, it says, Plaintiffs have not alleged a violation of their plans *as written*. Opp'n 16–22. But that argument depends entirely on enforcing

_____

available for ERISA § 502(a)(2) claims includes "such other equitable or remedial relief as the court may deem appropriate"); *CIGNA Corp. v. Amara*, 563 U.S. 421, 439–40 (2011) ("appropriate equitable relief" refers to relief *typically* available in equity," including reformation).

Appellate Case: 23-2369     Page: 17     Date Filed: 11/13/2023 Entry ID: 5335197

the unenforceable CPO Terms. *See, e.g.*, *id*. 16 ("the form of payment United used is a form of payment expressly provided for under [Plaintiffs'] plans"); *id.* 17 (United's "performance is the very performance permitted under the contract"); *id.* 18 (contending that "'benefit of the bargain' standing" fails when the defendant's performance was "compliant with the actual contract"). Without those illegal, void terms, Plaintiffs *were* deprived of the benefit of their bargain—that is, the bargain their plans, construed consistently with ERISA, guaranteed.

That injury was real, and it was personal to Plaintiffs. Plaintiffs received covered healthcare services and were owed benefits by their plans. United removed assets from Plaintiffs' plans equal to the amount owed to Plaintiffs, but instead of sending that money to Plaintiffs (or the providers, on Plaintiffs' behalf) as benefits, United kept the money for itself. That is, instead of paying Plaintiffs' benefits in cash (the only legal way to pay under the enforceable plan terms), United purported to pay the benefits through "debt cancellation" (an illegal way to pay the benefits).

The failure of United's logic comes into sharp relief when United vainly attempts to distinguish *Mitchell* and *Carlsen*, the controlling cases from this Court. *See* Opp'n 16 (discussing *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 909 (8th Cir. 2016)); *id*. 18–22 (discussing *Mitchell*, 953 F.3d at 536, among other authorities). United acknowledges that those cases hold that a "variance between what [a plaintiff] received and what he was entitled to by the terms of his contract" qualifies

12

as "actual injury" for standing purposes. Opp'n 16 (citing *Carlsen*, 833 F.3d at 909); *see also id.* 19 (acknowledging that, in *Mitchell*, "[t]he concrete injury was the denial of benefits to which the *Mitchell* plaintiffs were contractually entitled") (citing *Mitchell*, 953 F.3d at 536) (quotation marks omitted). United contends that *Carlsen*, *Mitchell*, and similar cases do not apply here because "the form of payment United used is a form of payment expressly provided for under [Plaintiffs'] plans." Opp'n 16. *See also id.* 18 (asserting that *Mitchell* and similar cases "simply recognized benefit of the bargain standing where the defendants' performance allegedly failed to measure up to ***actual*** contract terms"). Again, United is suggesting that it can contract around ERISA and this Court's decisions using illegal plan terms. But if the Court ignores the void *ab initio* CPO Terms—as it must—then Plaintiffs *have* alleged that United's performance failed to live up to the actual, enforceable plan terms. This case is exactly like *Carlsen* and *Mitchell*, and United offers absolutely no reason for diverging from those binding precedents.

### B. Standing Does Not Require Plaintiffs to Allege "Out-of-Pocket Loss" or "Imminent Risk of Future Harm."

Under *Mitchell* and *Carlsen*, United's failure to pay Plaintiffs' benefits in cash as required by the enforceable terms of their plans—all by itself—inflicted a cognizable Article III injury-in-fact. *Mitchell*, 953 F.3d at 536; *Carlsen*, 833 F.3d at 909. Refusing to accept that unavoidable conclusion, United busies itself trying to

13

negate *additional* types of injury that certainly *also* give rise to standing, but that are not required to establish standing in this case. Opp'n 26–35.

*First*, the district court's holding and United's argument that standing requires "out-of-pocket" losses, R. Doc. 60 at 15; Opp'n 27, are completely unsupported and contradict *Mitchell* in any event. United misleadingly cites the Supreme Court's decision in *Thole v. U. S. Bank N.A.*, 140 S.Ct. 1615, 1619 (2020), but that opinion does not even discuss "out-of-pocket" losses, let alone require them for standing. As Plaintiffs previously discussed, Br. 42–43, *Thole* simply stands for the proposition that to have standing, a plaintiff must be impacted personally by the conduct he seeks to challenge. 140 S.Ct. at 1619 (finding that the "plaintiffs themselves have no concrete stake in the lawsuit"). That is the case here: Plaintiffs, personally, had their benefits underpaid because of United's illegal cross-plan offsets. No *additional* losses are necessary to establish standing.

*Second*, United is equally off base when it contends that Plaintiffs' standing fails because they have not sufficiently alleged "imminent future harm" due to the risk of balance-billing by their providers. Opp'n 27–29.[6] Plaintiffs do, of course, face

---

[6] United misleadingly cites a recent unpublished memorandum disposition from the Ninth Circuit as though it establishes a rule that unpaid debts resulting from cross-plan offsets cannot establish "future harm" for standing purposes. Opp'n 28, 30 (discussing *Ryan S. v. UnitedHealth Grp., Inc.*, 2022 WL 883743, at *3 (9th Cir. Mar. 24, 2022)). *Ryan S.* established no such rule, and did not cite or apply any of the other cases United highlights in its discussion of future harms. Instead, *Ryan S.*

a risk of balance-billing in the future. *See* Br. 31–32 n.14.[7] As Plaintiffs have explained, it was error for the district court to draw inferences to the contrary against Plaintiffs, *id*., and United merely repeats the same faulty reasoning and unfair conclusions. Opp'n 28–29.

The more salient point, however, is that under the controlling law, a plaintiff need not demonstrate a risk of being balance-billed by a provider—let alone prove that the risk is "imminent"—to have sufficient injury to challenge the non-payment of benefits due under an ERISA plan. *Mitchell*, 953 F.3d at 536. United's failure to pay Plaintiffs' contractually owed benefits in full, and in a legal manner, is not a future harm at all; Article III injury has already occurred. *Id*.

United's own discussion of why *Mitchell* found balance-billing unnecessary to establish standing, moreover, makes exactly this point. United explains:

---

rejected standing because that plaintiff "allege[d] no facts that plausibly explain why cross-plan offsetting would cause the bills to fall to him." 2022 WL 883743, at *3. Plaintiffs here have alleged in detail how United's offsets caused their injuries. *See* Br. 2–8.

[7] Contrary to United's contention, Opp'n 27–28, Plaintiffs did not waive this argument by making it in a footnote. *See Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715–16 (8th Cir. 2008) (finding a "lengthy footnote" in the plaintiff's brief was "sufficient to avoid waiver on appeal"). The footnote—which spans two pages—explains why the district court's ruling on the risk of imminent harm was erroneous, and why, under *Mitchell*, Plaintiffs had no reason to include allegations about balance-billing in their Complaint. Br. 31–32 n.14. Moreover, Plaintiffs' discussion of the risk of balance-billing was ***not*** limited to the footnote; Plaintiffs elsewhere highlighted the district court's erroneous factual finding that Ms. Smith's provider agreed not to balance-bill her. *Id.* 7 & n.5.

15

> If a plaintiff's contract entitles her to certain payments, and the contract allows her to direct payment to her doctor, then **of course she has standing to sue if the doctor doesn't receive the payment promised by the contract**, because. . . the defendant's failure to pay the doctor is a breach of what the defendant promised the plaintiff it would do. . . . [T]he fact that the provider did not issue a balance bill to the plaintiffs in *Mitchell* was irrelevant because, again, the Mitchells alleged breach of contract. **An allegation of contractual breach alone suffices for standing, so the Mitchells did not need to make additional allegations of financial harm via a balance bill**.

Opp'n 19–20 (citations omitted) (emphasis added). This analysis is exactly right, and squarely on point. The "actual" contract terms United followed are a red herring; they were void *ab initio*. Plaintiffs allege that United did not comply with the **enforceable** terms of their plans, and—as United concedes—that, alone, is sufficient for standing.

## III. Plaintiffs—Not Only Their Doctors—Were Injured by United's Payments-by-Offset Because the Offsets Were Less Valuable Than Cash.

As Plaintiffs discussed at length in their opening brief, it is well-accepted among courts that forgiveness of debt—even an ***established*** debt—is worth less than its face value when the debt is effectively unrecoverable, or when the creditor hasn't tried to collect it. *See* Br. 34–35 (citing *Perks v. TD Bank, N.A.*, 2022 WL 1451753, at *2 (S.D.N.Y. May 9, 2022)); *see also* Br. 34 n.16 (collecting cases). United does not even attempt to dispute this point. Nor does United dispute that it never tried to collect on the providers' purported debts and was unlikely ever to do so. In fact, United repeatedly *concedes* that absent its illegal cross-plan offsetting scheme, its

16

purported overpayments are "essentially unrecoverable." Opp'n 3; *see also id.* 5 (admitting United's "practical inability to recover most overpayments"). United even seems to agree that cross-plan offsets are less valuable to Plaintiffs' providers than cash benefit payments. Opp'n 31. But, according to United, none of this matters because its benefit underpayments *only* injured Plaintiffs' doctors, not Plaintiffs themselves. Opp'n 31–35.

United is flat wrong. Its cross-plan offsetting scheme injured Plaintiffs, as well as their plans and doctors. But the breach of contract injury resulting from United's failure to pay the benefits due belongs to ***Plaintiffs***—not their doctors. As this Court explained in *Peterson II*, "providers are generally not authorized under ERISA to sue on their own behalf, even if they are entitled to direct payment . . . because the provider is not itself a plan participant . . . ." *Peterson II*, 913 F.3d at 774–75; *see also Mitchell*, 953 F.3d at 536 ("The wrongful denial of plan benefits breaches the parties' contract and deprives the **participant** of the benefit of their bargain. . . . **even if the benefits are assigned to a third party**.") (emphasis added). Put differently, because the plan's obligation to pay benefits runs to the plan participant, not to their doctor, *Peterson II*, 913 F.3d at 774–75, United's failure to pay benefits

Appellate Case: 23-2369    Page: 23    Date Filed: 11/13/2023 Entry ID: 5335197

the plans owed *to Plaintiffs* injured *Plaintiffs*—even if United was supposed to send payment on the Plaintiffs' behalf directly to their doctors. [8]

Recapping the key facts demonstrates how United's cross-plan offset scheme injured Plaintiffs. *See* Br. 2–9 (summarizing allegations and citing Complaint). Plaintiffs received medical services from their doctors, and those services were not free. *Id*. 4. Plaintiffs incurred a legal obligation to pay their doctors for the services rendered—in other words, **Plaintiffs owe a debt to their doctors**. *Id*. 3–4.[9] Because the services were covered under Plaintiffs' plans, the **plans owe benefit payments to Plaintiffs**, which Plaintiffs expected to use to discharge the debts they owe their doctors. *Id*. **United was supposed to send Plaintiffs' benefits directly to**

---

[8] United is also wrong when it asserts that Plaintiffs did not allege facts to support their injury. Opp'n 31. Plaintiffs alleged that they were injured when, instead of making a monetary payment on Plaintiffs' behalf, United "sends the providers a letter informing them that their alleged debt to another Plan has been reduced." App. 29; R. Doc. 35 at 29 (¶ 66). As Plaintiffs explained, "**[t]he saying 'cash is king' is apt here; paying the provider via the transfer of money is inherently more value to plan participants and beneficiaries than United's unilateral assertion that those patients' debts have been satisfied.**" *Id*. (emphasis added). Plaintiffs also alleged that their doctors disputed the existence and amount of the debts United claimed the doctors owed to other plans, App. 8, 37–38, 40; R. Doc. 35 at 8, 37–38, 40 (¶¶ 12, 84, 92); that the doctors did not agree to resolve the disputed overpayments through offsets, App. 8; R. Doc. 35 at 8 (¶ 12); and that United never attempted to collect on the purported debts, App. 2, 11–12, 16; R. Doc. 35 at 2, 11–12, 16 (¶¶ 2, 26, 35).

[9] As Plaintiffs alleged, their plans expressly provide that it is the plan participant's "responsibility to pay the provider the charges [the participant] incurred, including any difference between what [the participant was] billed and what the Plan paid." App. 193, 212; R. Doc. 45-1 at 4, 23.

**Plaintiffs' doctors**, *id.* 4–5, but **United did not do that**. *Id.* 5–6. Instead, United told the doctors that, in lieu of payment in cash, it would use the Plaintiffs' benefits to "offset" purported "debts" United unilaterally claimed each doctor owed to some other plan (which, in each case, just so happened to be a fully-insured plan funded by United itself). *Id.* 6. Ignoring the doctors' objections to both the existence of the doctors' purported debts and to United's extrajudicial method of collecting on those disputed debts, and **without seeking or obtaining the doctors' agreement to payment-by-offset for their services to Plaintiffs**, United went ahead and pocketed Plaintiffs' benefits. *Id.* 6–8. But because United did not actually pay Plaintiffs' doctors any money, and the doctors did not agree to accept payment through offsets, **Plaintiffs' debts to their doctors remain unpaid**. *Id.* 7.

This injury exists *even if* the Court assumes (which it should not) that payment-by-offset is allowed under ERISA. Dollar-for-dollar, Plaintiffs allege that United's offsets are worth less than the amount of benefits the plans owed to Plaintiffs (i.e., they were not "cash equivalents" as the Plans' terms required) because they purport to extinguish disputed, unrecoverable debts, and Plaintiffs' doctors did not agree to accept the offsets in the first place. **Plaintiffs** are worse off now than they would have been if United had paid their doctors in cash, rather than sending a letter promising to forgive debts the providers never acknowledged. Whether Plaintiffs' doctors are *also* worse off is entirely beside the point.

19

## IV. United's Breaches of Fiduciary Duty Caused Plaintiffs to Suffer Cognizable Injury-in-Fact.

Finally, United offers no valid reason for rejecting Plaintiffs' argument that an ERISA fiduciary who breaches its fiduciary duties when administering a plan participant's benefits inflicts concrete injury on that participant. *See* Br. 36–44. Indeed, United does not even fairly engage with Plaintiffs' argument, instead setting up a straw man by claiming Plaintiffs contend that "standing rules do not apply in the context of ERISA disputes." Opp'n 35. That is not Plaintiffs' argument at all. Instead, Plaintiffs' opening brief carefully walked through the two-part analysis the Supreme Court has prescribed to demonstrate that the injury caused by United's statutory violations and fiduciary breaches is "concrete" ***even if*** the Court doubts Plaintiffs have suffered a pocketbook injury. *See* Br. 36–44 (discussing and applying *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340–41 (2016) and *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2204–05 (2021)).

United, by contrast, misconstrues the Supreme Court's holding in *TransUnion*, citing it for the proposition that "a plaintiff may not ground standing solely on the asserted illegality of a defendant's conduct, without an allegation that the conduct caused concrete, personal injury." Opp'n 23–24. United's liberal paraphrasing of *TransUnion* is close, but not quite right. *TransUnion* held that "[o]nly those plaintiffs who have been *concretely* harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." 141

Appellate Case: 23-2369     Page: 26     Date Filed: 11/13/2023 Entry ID: 5335197

S.Ct. at 2205. The Court recognized that "certain harms readily qualify as concrete injuries under Article III," and that "[t]he most obvious are traditional tangible harms, such as physical harms and monetary harms." *Id.* at 2204. The Court then discussed at length how the harm caused by a statutory violation can *also* be concrete if the injury bears "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.*

Plaintiffs *have* alleged monetary harms that "readily qualify as concrete injuries under Article III," *id.*; namely, United's failure to pay benefits owed to Plaintiffs under the plans' enforceable terms, *supra* § II, and its choice to pay benefits using a form of "consideration" that was worth less than Plaintiffs were owed, *supra* § III. Plaintiffs' point in section III.C of their opening brief, though, was that even before those monetary injuries arose, United's ERISA violations imposed on Plaintiffs "cognizable" harms that are "traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 141 S.Ct. at 2206. As Plaintiffs explained, Br. 37–40, when a faithless fiduciary like United administers an ERISA benefit claim in its own interest, rather than in the interest of the plan participant, that misconduct "presents a material risk of harm to [the participant's] interest in their contractual benefits," which is a concrete injury for Article III purposes. *Wit v. United Behavioral Health*, 79 F.4th 1068, 1082 (9th Cir. 2023) (holding plaintiffs had Article III standing to challenge administrator's development

21

and use of excessively restrictive coverage guidelines in breach of its fiduciary duties irrespective of monetary injury). Stated differently, as soon as United applied its abusive, self-interested self-help scheme to Plaintiffs' benefit claims, it put Plaintiffs' benefits at risk.

Congress saw fit to give ERISA plan participants multiple causes of action to enforce the strict fiduciary duties ERISA imposes, Br. 37–40, and fiduciary breaches have been actionable in American courts since before the founding with "no further inquiry" into whether the breach caused monetary injury. Br. 41–42 & n.21. *See also, e.g.*, *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 161 (3d Cir. 2022) (Phipps, J., concurring) ("The claims that Clemens pursues here – for negligence, **breach of contract**, breach of confidence, and **breach of fiduciary duty** – are traditional causes of action that were recognized as well suited for judicial resolution at the time of the Constitution's adoption. She therefore has standing.") (emphasis added) (footnote omitted). Under *Spokeo* and *TransUnion*, therefore, Plaintiffs' injury from United's ERISA violations is concrete. *Spokeo*, 578 U.S. at 340–41 and *TransUnion*, 141 S.Ct. at 2204–05.[10] Despite its misconstruction of *TransUnion* and its

---

[10] Since *TransUnion*, courts have recognized that harms arising from ERISA violations readily qualify as injuries-in-fact for Article III purposes. *See, e.g.*, *Falberg v. Goldman Sachs Grp., Inc.*, 2022 WL 538146, at *6 (S.D.N.Y. Feb. 14, 2022), *leave to appeal denied sub nom.*, *Goldman Sachs 401(k) Plan Ret. Comm. v. Falberg*, 2022 WL 4126112 (2d Cir. June 29, 2022) ("[O]ther courts have similarly

22

fabrication of an "out-of-pocket" loss rule that exists nowhere in the law, United cannot escape that Plaintiffs have alleged concrete injuries resulting from its disloyal and abusive cross-plan offsetting scheme.

Rather than attempt to refute Plaintiffs' analysis, United baldly asserts that the Supreme Court "flatly rejected" Plaintiffs' argument in *Thole*. Opp'n 35. Not so. The plaintiffs in *Thole* failed to allege that the trustees' mismanagement created *any* risk, at all, to plaintiffs' *own* benefit payments. 140 S.Ct. at 1618 (emphasizing that the plaintiffs, participants in a defined-benefit pension plan, were entitled to (and had received) fixed benefit payments that would "not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions"). In contrast, here, Plaintiffs allege that United created a self-interested scheme designed to benefit United at the expense of plans, plan participants, and healthcare providers, and that United subjected Plaintiffs' ***own*** benefit payments to that disloyal scheme. At a minimum, United's faithless acts presented a material risk to Plaintiffs' ***own*** benefit payments. Plaintiffs' point—which United wholly ignores—is that this

---

found that *TransUnion* does not preclude ERISA plaintiffs from establishing standing at the outset.") (collecting cases).

Appellate Case: 23-2369    Page: 29    Date Filed: 11/13/2023 Entry ID: 5335197

injury was sufficiently concrete to give Plaintiffs a "personal stake" in the case and, therefore, Article III standing. *See, e.g.*, *TransUnion*, 141 S.Ct. at 2203.[11]

## V. Conclusion

Article III simply ensures that a court will resolve only "a real controversy with real impact on real persons." *TransUnion*, 141 S.Ct. at 2203 (quotation marks omitted). Plaintiffs are real people who were really impacted when United took for itself the benefits Plaintiffs' ERISA plans owed them, through the abusive and illegal cross-plan offsetting scheme at the center of the parties' very real controversy. United's effort to lock Plaintiffs out of the federal courts—by citing plan terms that authorize it to do what ERISA prohibits—must fail.

The district court's order should be reversed and the Court should hold that Plaintiffs have Article III standing to challenge United's cross-plan offsetting scheme.

---

[11] United also gives the back of the hand to Plaintiffs' argument, Br. 37–38 n.18, that United's misrepresentations to Plaintiffs that their benefits had been paid inflicted "informational injury" that is also concrete for Article III purposes. Opp'n 35–36 n.12. United just ignores Plaintiffs' allegations that United's falsehoods deprived Plaintiffs of their statutorily-guaranteed right to a full and fair review of their benefit claims. Br. 37–38 n.18 (citing, *inter alia*, App. 26; R. Doc. 35 at 26 (¶ 59); 29 U.S.C. § 1133). Notice to Plaintiffs' providers—who, again, have *no* rights of their own under ERISA—was not sufficient to negate Plaintiffs' injury.

24

Dated: November 13, 2023

Respectfully submitted by:

/s/ *Kristen G. Marttila*
Kristen G. Marttila
Derek C. Waller
LOCKRIDGE GRINDAL NAUEN, P.L.L.P
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401
Tel. (612) 339-6900
kgmarttila@locklaw.com
dcwaller@locklaw.com

Karen L. Handorf, Esq.
Julie S. Selesnick
BERGER MONTAGUE PC
2001 Pennsylvania Ave., NW, Suite 300
Washington, D.C. 20006
Tel. (202) 559-9740
khandorf@bm.net
jselesnick@bm.net

E. Michelle Drake
BERGER MONTAGUE PC
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Tel. (612) 594-5999
emdrake@bm.net

D. Brian Hufford, Esq.
Jason S. Cowart, Esq.
ZUCKERMAN SPAEDER LLP
485 Madison Avenue, 10th Floor
New York, NY 10022
Tel. (212) 704-9660
dbhufford@zuckerman.com
jcowart@zuckerman.com

25

Caroline E. Reynolds, Esq.
ZUCKERMAN SPAEDER LLP
1800 M St. NW, Suite 1000
Washington, DC 20036
Tel. (202) 778-1800
creynolds@zuckerman.com

*Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 6,314 words.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

3. This document complies with 8th Cir R 28A(h) because the document has been scanned for viruses and it is virus-free.

/s/ *Kristen G. Marttila*
Kristen G. Marttila
Attorney for Plaintiffs-Appellants

Dated: November 13, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Kristen G. Marttila*
Kristen G. Marttila
Attorney for Plaintiffs-Appellants